SARTAIN, Judge.
This is an appeal by plaintiff-appellant from judgment pertaining to a property settlement incidental to suit for separation and divorce. The trial judge found in favor of defendant holding a prenuptial marriage agreement governing the personal property of the parties absolutely null and further awarding attorney fees and costs against plaintiff. We reverse for reasons stated herein.
On November 25, 1960, George H. Wilkinson, plaintiff herein, and Betty Ann David, defendant herein, entered into a prenuptial marriage agreement stating that it was their intention to remain separate in property and formally renounce the community of acquets and gains between husband and wife. Miss David, a sixteen year old unemancipated minor at the time, was assisted by her mother, whose signature appears on the agreement. The signature of Miss David’s father is absent from the document and it appears from the evidence adduced at trial that he refused to sign it when so requested. Plaintiff and defendant were subsequently married on November 27, 1960. They were granted a final divorce on February 12, 1974.
Defendant argues now that the prenuptial marriage agreement executed by herself and plaintiff is invalid due to the fact that she was a minor at the time of the execution of the contract, and as such, required the assistance of her father in order to form a legally enforceable agreement.
Although unemancipated minors in Louisiana are under a general incapacity to contract by virtue of La.C.C. Art. 1785, that same article expressly acknowledges the validity of a minor’s stipulation in a prenuptial marriage agreement provided they are “made with the consent of those whose authority is in such cases required by law.” The meaning of this portion of La.C.C. Art. 1785 is illuminated by La.C.C. Art. 2330 which states that a minor must have assistance in forming his prenuptial marriage agreements of those whose consent is necessary for the marriage itself. The text of that article states:
“Art. 2330. The minor, who is capable of contracting matrimony, may give his consent to any agreements which this contract is susceptible of; and the agreements entered into and the donations he has made by the same, are valid, provided that, if he be not emancipated, he has been assisted in the agreement by those persons whose consent is necessary to his marriage”.
By “necessary to his marriage” is actually meant necessary to a valid marriage as can be seen from the French text of the La. Civil Code of 1825 which states:
Le mineur, habile a contracter mar-iage, peut consentir a toutes les conventions dont ce contrat est susceptible; et les conventions et donations qu’il y a faites, sont valables, pourvu que, s’il n’est pas emancipe, il ait ete assiste dans le contrat par les personnes dont le con-sentement est necessaire pour la validite du mariage. (Emphasis ours)
When there is a conflict between the English and French texts of the Code of 1825, the French text prevails. Phelps v. Reinach, 38 La.Ann. 547; Sample v. Whitaker, 172 La. 722,135 So. 38 (1931).
The question thus becomes one of the determination of whose consent is necessary for the validity of the marriage of a minor in Louisiana, for it is that person or persons who must assist the minor in the execution of his prenuptial marriage agreement pursuant to the above article.
It is at this point that a basic inconsistency arises in the text of our Civil Code. The text of La.C.C. Art. 97 states:
Art. 97. The minor of either sex, who has attained the competent age to marry, must have received the consent of his father and mother or of the survivor of them; and if they are both dead, the consent of his tutor.
*109 He must furnish proof of this consent to the officer to whom he applies for permission to marry.
It appears from the language of this article that the consent of the minor’s parents, if alive, or his tutor if they are deceased, is an essential element to a valid marriage involving the minor. However, it is clear that lack of consent on the part of the parents does not affect the validity of the marriage of a minor. It is expressly stated in La.C.C. Art. 112 that such marriages can not be declared null for lack of consent by the parents.
Art. 112. The marriage of minors, contracted without the consent of the father and mother, can not for that cause be annulled, if it is otherwise contracted with the formalities prescribed by law; but such want of consent shall be a good cause for the father and mother to disinherit their children thus married, if they think proper.
The discrepancy between La.C.C. Arts 97 and 2330 on the one hand and La.C.C. Art. 112 on the other is rooted in the source of these articles found in the Code Napoleon. An examination of these sources reveals the reasons for the contradiction.
The counterpart of La.C.C. Art. 97 is found in Code Napoleon Art. 148 et seq. Article 148 states:
Art. 148. The son who has not attained the full age of twenty-five years, the daughter who has not attained the full age of twenty-one years, cannot contract marriage without the consent of their father and mother; in case of disagreement, the consent of the father is sufficient.[1]
Article 150 states that if the parents are dead then it is the grandparents who must consent to the marriage. It may be noted that the consent of the father spoken of in Art. 148 as the determining factor with respect to consent is no longer the law in France. The article has been amended in such a way that if either parent consents, the marriage is considered as one contracted with consent. Planiol Civil Law Treatise, Vol. 1, part 1, sec. 747.
The prenuptial marriage agreements of minors in France are treated in virtually the same manner as the contract of marriage itself. The text of Code Napoleon Art. 1398, the source of Louisiana C.C. Art. 2330, states:
Art. 1398. The minor competent to contract marriage is competent to consent to all the agreements of which such contract is susceptible; and the agreements and donations which he has made therein are valid, provided he have been assisted in the contract by the persons whose consent is necessary to render such marriage valid.
Planiol explains Code Napoleon Art. 1398 as follows:
785. The Traditional Rule
Art. 1398 states that the same prerequisites apply to a minor’s marriage contract as to his marriage. This rule is based on the old maxim “Habilis ad nup-tias, habilis ad pacta nuptialia", which means that the conditions are the same for both contracts, the marriage and the marriage contract.
786. Persons Who have to Assist a Minor
Not capable to contract alone, a minor, making a marriage contract, needs the authorization of the same persons as those who must authorize his marriage (Art. 1398). They are: (1) his father and mother, (2) if not living, his other ascendants; (3) if none is living, the family meeting (Art. 148 f f.)
*110 The minor can make a valid marriage contract only with the authorization of the parent or ascendant who authorizes his marriage.
A specific remedy is provided in favor of parents or other persons whose consent is required by law when the requisite consent has not been granted. Code Napoleon Art. 182 states:
Art. 182. A marriage contracted without the consent of the father and mother, of the ancestors, or of the family council, in cases where such consent was necessary, can only be impeached by those whose consent was requisite, or by such of the two married persons as stood in need of that consent.
Thus, an aggrieved parent or parents could have the marriage of a minor annulled. Planiol in Secs. 1071-1072, vol. 1, part. 1, of his treatise states:
“The future spouses require the consent of their parents as long as they have not attained their majority. In default of the necessary consent, the contracted marriage will be annullable. (Art. 182).”
He points out further in Sec. 1073 that it is the parents, among other persons, who are given this right of action.
However, it is here that the redactors of the Louisiana Civil Code diverged from the French law and adopted a position directly opposed to that held in France. The text of La.C.C. Art. 112 states that the marriage of a minor without the consent of his parents can not for that reason be annulled. It is obvious, for certain policy reasons which history does not reveal, that the redactors felt parents should not be able to destroy a marriage of a minor merely because the minor did not have their consent. The jurisprudence of this state has recognized that the parents’ consent is not necessary for a valid marriage involving a minor. Delpit v. Young, 51 La.Ann. 923, 25 So. 547 (1899); State v. Golden, 210 La. 347, 26 So.2d 837 (1946). See also: 14 T.L.R. 106 and 7 L.L.R. 442.
 It can thus be seen that the premise upon which Code Napoleon Art. 1398 is based, that is, that the parents' consent is mandatory for a valid marriage, (due to the remedy provided parents in Code Napoleon Art. 182) has been destroyed by virtue of our redactors’ position enunciated in La.C.C. Art. 112. A literal interpretation of La.C.C. Art. 2330 would then compel a conclusion that the prenuptial marriage contract here in question is valid. Since no consent from anyone other than the parties themselves was necessary for a valid marriage, there was no corresponding person under the law who would be required to assist in the prenuptial marriage agreement. This conclusion is further justified under the maxim noted by Planiol, “Hábilis ad nuptias, hábilis ad pac-ta nuptialia” that conditions are the same for both contracts.
Planiol points out in Sec. 829, vol. 3, part 1:
829. Its Accessory Character
Marriage contract is an accessory contract, attached to marriage, which is the principal contract. Marriage contract depends, therefore, on (1) the celebration of the marriage, (2) its validity. This is expressed by saying that the marriage contract is made always under the condition si nuptiae sequantur.
In Sec. 830 he indicates that if the marriage is not celebrated, then the prenuptial contract lapses, and further, if the marriage is annulled, the agreement loses its purpose. Since the marriage itself is the principal agreement and the marriage contract only derivative of that agreement, ability to perform the greater without assistance should a fortiori include the ability to perform the lesser without assistance.
For these reasons, we conclude that the marriage contract entered into by these parties without the consent of the father of the minor is, nevertheless, valid and controlling among these litigants.
*111 Inasmuch as we have determined that the prenuptial agreement is valid, it follows that the parties were separate in property. It is for this reason that the casting, of appellant for defendant’s attorneys’ fees and costs, payable out of the community, must be set aside.
Our jurisprudence is clear that the husband’s liability for his wife’s attorneys’ fees arises from the former’s position as head and master of the community. Tanner v. Tanner, 229 La. 399, 86 So.2d 80, 81, 83 (1965); Malone v. Malone, 260 La. 759, 257 So.2d 397 (1972).
Our courts have further held that where the community was judicially dissolved by judgment of separation the wife is not entitled to attorneys’ fees in a subsequent divorce proceeding. Moseley v. Moseley, 216 So.2d 852 (La.App. 2 Cir. 1968); Schiro v. Perkins, 240 So.2d 920 (La.App. 4 Cir. 1970). We feel this to be analogous to the present case.
The injunction permanently restraining appellant from disposing of or alienating any portion of the assets of the community must also be recalled and vacated.
Accordingly, for the above reasons, the judgment of the district court decreeing the prenuptial agreement between the parties null and void is reversed and set aside and the same is hereby recognized and decreed valid. Those portions of the judgment decreeing a partition of the property, awarding attorneys’ fees to the wife, directing that the cost of these proceedings be paid from and constitute a charge against the assets of the community, and the permanent injunction restraining the plaintiff-appellant from disposing of any assets of the community are hereby reversed and set aside. All costs of these proceedings are charged against defendant-appellee.
Reversed and rendered.

. All translations of the Code Napoleon cited herein are taken from the French Civil Code literally interpreted from the original and official edition published at Paris in 1804 by a barrister of the Inner Temple, republished by Claitor’s Publishing Co., 1960.