323 So.2d 120 (1975)
George H. WILKINSON
v.
Mary Betty Ann D. WILKINSON.
No. 56456.
Supreme Court of Louisiana.
November 3, 1975.
Dissenting Opinion December 18, 1975.
*121 Davis A. Gueymard, Hynes & Gueymard, Baton Rouge, for defendant-applicant.
Leon Gary, Jr., Ellison, Gary & Field, Baton Rouge, for plaintiff-respondent.
*122 DIXON, Justice.
On November 25, 1960, George Huber Wilkinson, then aged twenty-five, and Mary Betty Ann David, then aged sixteen, executed a prenuptial contract before a notary and two witnesses, in which the parties stipulated there would be no community of acquets and gains between them. Additionally, Betty Ann David surrendered any right to alimony should their impending marriage ever be dissolved.
On November 27, 1960, Miss David's seventeenth birthday, the parties were wed. In 1966 Mr. Wilkinson sought a separation from his wife; his suit was abandoned because there was a reconciliation.
However, on November 16, 1973, Mr. Wilkinson instituted the present suit in the Family Court of East Baton Rouge Parish to obtain a divorce on the grounds of adultery. Mrs. Wilkinson, by way of reconventional demand, alleged the existence of a community of acquets and gains and requested a partition thereof. Mr. Wilkinson urged the November 25, 1960 marriage contract as a defense against the reconventional demand.
The Family Court decreed that the prenuptial contract was absolutely null, since Mrs. Wilkinson, who was a minor at the time it was executed, did not have her father's consent to or assistance in its execution. The court, therefore, found that a community existed, and ordered it partitioned. Attorney's fees for both parties and all costs were assessed against the community.
The court of appeal reversed. Wilkinson v. Wilkinson, 312 So.2d 107 (La.App.1st Cir. 1975). The appellate court reasoned that, although C.C. 97 requires the consent of both father and mother for a minor to marry, C.C. 112 provided that a marriage cannot be annulled for the want of parental consent; therefore since the consent of the father was not necessary to the marriage, it was not necessary to the validity of the prenuptial contract. We granted certiorari to review the correctness of that decision. 314 So.2d 735 (La.1975).
The evidence before us shows that Miss David, along with her mother and her fiancee, Mr. Wilkinson, executed the marriage contract in question. However, her father, who had died before trial, although consenting to the marriage, had refused to sign or participate in the marriage contract, because he did not understand the agreement (despite the fact that both his wife and daughter asked him to sign).
Thus the question before us is whether a marriage contract, entered into by a sixteen year old unemancipated minor, without the assistance of her father, is valid. We hold that it is not.
Article 1785 of the Civil Code expresses the general incapacity of minors to contract. However, it enumerates certain exceptions to the general incapacity, one of which states, "His stipulations in a marriage contract, if made with the consent of those whose authority is in such case required by law, are also valid."
The exception referred to is set out in article 2330 of the Civil Code, in that section of the Code dealing with the marriage contract:
Art. 2330. The minor, who is capable of contracting matrimony, may give his consent to any agreements which this contract is susceptible of; and the agreements entered into and the donations he has made by the same, are valid, provided that, if he be not emancipated, he has been assisted in the agreement by those persons whose consent is necessary to his marriage.
Article 2330 of the Civil Code has been part of our law in substantially the same form since the 1808 Civil Code. It was adopted from article 1398 of the Code Napoleon, which concluded "est necessaire pour la validite du mariage" (it is necessary for the validity of the marriage.)
*123 In the French text of the Civil Code of 1808, however, the article concludes "est necessaire pour son mariage" (is necessary for his marriage). In the French text of the Civil Code of 1825 the article concludes "est necessaire pour la validite du mariage" (is necessary for the validity of the marriage), to tract the identical language of its source, Article 1398 of the Code Napoleon. There is no substantial difference in the phrases, and we can only conclude that "necessary for his marriage" and "necessary for the validity of the marriage" are interchangeable phrases, meaning the same thing.
Article 97 of the Civil Code states:
The minor of either sex, who has attained the competent age to marry, must have received the consent of his father and mother or of the survivor of them; and if they are both dead, the consent of his tutor.
He must furnish proof of this consent to the officer to whom he applies for permission to marry.
Like article 2330, article 97 of the Code has been part of our law in substantially the same form since the 1808 Civil Code. Its source, article 148 of the Code Napoleon, provided:
The son who has not attained the full age of twenty-five years, the daughter who has not attained the full age of twenty-one years, cannot contract marriage without the consent of their father and mother; in case of disagreement, the consent of the father is sufficient.[1] Up to this point, the law is clear. Articles 97 and 2330 of our Civil Code, taken from the counterparts in the Code Napoleon, would seem to require the consent of the mother and father to the minor's marriage, and therefore the assistance of the mother and the father in the execution of the marriage contract.
However, confusion arises because of article 112 of the Civil Code, which states:
The marriage of minors, contracted without the consent of the father and mother, can not for that cause be annulled, if it is otherwise contracted with the formalities prescribed by law; but such want of consent shall be a good cause for the father and mother to disinherit their children thus married, if they think proper.
Thus, under this article, as interpreted by this Court in Delpit v. Young, 51 La.Ann. 923, 25 So. 547 (1899) and State v. Golden, 210 La. 347, 26 So.2d 837 (1946), if a minor manages to marry without his parents' consent, the marriage, for that reason, cannot be annulled. However, because the minor has in that situation contracted a marriage without parental consent, the law gives the nonconsenting parent(s) the right to disinherit the child.
Article 112 of our Civil Code has no counterpart in the Code Napoleon. Indeed, under article 182 of the Code Napoleon,[2] the marriage of a minor contracted without parental consent could be impeached by the nonconsenting parent. As explained by Planiol:
The future spouses require the consent of their parents as long as they have not *124 attained their majority. In default of this necessary consent the contracted marriage will be annullable. (Art. 182) Planiol Civil Law Treatise, vol. 1, part 1, sections 1071-1072.
Because our redactors rejected the French view that the nonconsenting parent(s) could annul the minor's marriage, the court of appeal concluded:
Since no consent from anyone other than the parties themselves was necessary for a valid marriage, there was no corresponding person under the law who would be required to assist in the prenuptial marriage agreement. This conclusion is further justified under the maxim noted by Planiol, `Habilis ad nuptias, habilis ad pacta nuptialia' that conditions are the same for both contracts. 312 So.2d 107, at 110.
However, the court below overlooks the fact that articles 97, 112, and 2330 of the Civil Code all came into our law at the same time, 1808, and have remained in our law substantially unchanged since that time. The court of appeal's decision leads to the conclusion that the redactors, by enacting article 112, while at the same time enacting articles 97 and 2330, repealed that part of article 2330 requiring that the minor be "assisted in the agreement by those persons whose consent is necessary to his marriage." Such a conclusion is foreign to rules of proper statutory interpretation.
In City of New Orleans v. Board of Supervisors of Elections for the Parish of Orleans, 216 La. 116, 145, 43 So.2d 237, 247 (1949), this Court summarized certain rules of statutory interpretation applicable to the instant case:
In the case of State v. Shusan, 206 La. 415, 19 So.2d 185, 190 this court approved and re-adopted "the principle announced by the textwriters that `laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject" and observed "In view of this well-recognized legal principle, it is not reasonable to conclude that the Legislature, in enacting a particular statute, intends that it shall be immediately nullified by another statute enacted at the same session. The principle that a repeal by implication is not favored by law is especially applicable as between two statutes passed at the same session of the Legislature. And where two acts relating to the same subject matter are passed at the same legislative session, there is a strong presumption against implied repeal, and they are to be construed together, if possible, so as to reconcile them, giving effect to each, and thereby avoid an implied repeal, rather than to infer that one destroys the other."
We believe that effect can be given to both article 112 and article 2330, by recognizing that the articles reflect two different, yet equally important, public policies of this state.
Article 112 of the Civil Code prevents the nonconsenting parents from annulling the marriage of their minor child because of the absence of consent. Delpit v. Young, supra; State v. Golden, supra. This is only one form of expression of the public policy of Louisiana that every effort must be made to uphold the validity of marriages. Succession of Gaines, 227 La. 318, 79 So.2d 322 (1955); Douglas v. Shephard, 193 So. 264 (La.App.2d Cir. 1939). Moreover, this policy is closely intertwined with the presumption of legitimacy. If the marriage of minors could be annulled for lack of parental consent by the nonconsenting parent(s), then the children of such marriage could easily be branded illegitimate. This certainly is not a desirable result in light of Louisiana's traditional policy of finding legitimacy whenever possible. See Lewis v. Powell, 178 So.2d 769 (La.App.2d Cir. 1965); Dorsey v. Williamston, 170 So.2d 773 (La.App. 1st Cir. 1964); Lambert v. Lambert, 164 So.2d 661 (La.App. 3rd Cir. 1964).
*125 On the other hand, another public policy traditionally recognized in Louisiana as beneficial to the public good is that a minor be protected in his contractual relationships. See article 1785, R.C.C. Thus, simple lesion will relieve a minor in every species of contract. Article 1864, R.C.C. In Harris v. Ward, 224 So.2d 517, 521 (La.App. 2d Cir. 1969) the court stated:
We believe the tenor running through the articles, cases and various commentaries is that the contracts of minors, although susceptible to annulment by the minor or his representative, nevertheless create certain legal effects binding on the party contracting with the minor as well as persons who are strangers to the immediate transaction. In other words, minority is a cloak or a weapon only in the hands of the minor or his representative which is available for his own protection and, so long as the agreement or contract has not been disavowed or annulled, it has the same effect as the contract of a person fully capable of contracting.
As one court stated, "one who deals with a minor does so at his peril." LaPorte v. Clesi, Inc., 197 So.2d 419, 423 (La.App. 4th Cir. 1967).
We believe that article 2330 of the Civil Code is such an expression of this state's strong public policy of protecting minors in their contractual relations. Thus, an unemancipated minor can enter into a marriage contract, but only with the consent of both parents, or the survivor, if one be dead, or the tutor, if both are dead. C.C. 97, 2330. Such an interpretation is consistent with the first paragraph of article 1785, which states:
Art. 1785. Minors emancipated may contract in the cases already provided by law, and when not emancipated, their contracts are valid, if made with the intervention of their tutors,[3] and with the assent of a family meeting in the cases where by law it is required.
Therefore, a marriage contract, entered into by a minor with the assistance (intervention) of his parents (tutor) is valid. However, if entered into without the assistance of both parents, such a contract is null. ("... In all other cases, the minor is incapacitated from contracting...." C.C. 1785.) In the instant case, Mrs. Wilkinson entered into the contract when she was a minor, without the assistance of her father; therefore, the contract is null.
However, plaintiff argues that even if the contract is null, Mrs. Wilkinson has lost the right to attack it by the prescription of five and ten years. We find this contention to be without merit.
La. R.S. 9:291 limits the actions that a married woman can bring against her husband during the marriage to four:
As long as the marriage continues and the spouses are not separated judicially a married woman may not sue her husband except for:
(1) A separation of property;
(2) The restitution and enjoyment of her paraphernal property;
(3) A separation from bed and board; or
(4) A divorce. Added Acts 1960, No. 31, § 2.
The four enumerated in the statute are exclusive, not illustrative. Palmer v. Edwards, 156 So. 781 (La.App. 1st Cir. 1934). Thus, during the marriage, Mrs. Wilkinson could not have brought an action against her husband to annul the contract. Prescription cannot run against a cause of action which has not accrued or while that cause of action cannot be exercised. *126 Guderian v. Sterling Sugar and Railroad Co., 151 La. 59, 91 So. 546 (1922); South Arkansas Lumber Co., v. Tremont Lumber Co., 146 La. 61, 83 So. 378 (1919); Soirez v. Great American Insurance Company, 168 So.2d 418 (La.App. 3rd Cir. 1964); Succession of Clark, 155 So.2d 37 (La.App. 4th Cir. 1963).
Plaintiff asserts that any provision suspending the accrual of prescription between husband and wife is unconstitutional. Plaintiff cites no authority for this novel assertion. Indeed, the state has broad authority to regulate the status of marriage. Rhodes v. Miller, 189 La. 278, 179 So. 430 (1938); Land v. Land, 183 La. 588, 164 So. 599 (1936). As stated in Klein v. Mayo, 367 F.Supp. 583, 585 (D.Mass.1973), affirmed, 416 U.S. 953, 94 S.Ct. 1964, 40 L.Ed.2d 303 (1974):
Marriage has long been held to be a social relation clearly subject to state regulation. Maynard v. Hill, 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1888); Loving v. Virginia, 388 U.S. 1, 7, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Boddie v. Connecticut, 401 U.S. 371, 376, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).
This contention is without merit.
Plaintiff also contends that Mrs. Wilkinson is estopped from asserting the invalidity of the marriage contract. This assertion is based on the facts surrounding the 1966 separation suit. In that suit, Mrs. Wilkinson reconvened, alleging the existence of a community of acquets and gains. The matter went to trial, but before a judgment could be rendered, the parties reconciled. Plaintiff contends that Mrs. Wilkinson conditioned the reconciliation on the voidance of the marriage contract. It is alleged that Mr. Wilkinson refused this condition, yet Mrs. Wilkinson nonetheless went through with the reconciliation. Plaintiff argues Mrs. Wilkinson is therefore estopped from asserting its invalidity at this time. We find this argument to be without merit.
First we note that the testimony about the reconciliation is conflicting. Mrs. Wilkinson testified that for a year after the reconciliation Mr. Wilkinson continually assured her that the document was without legal effect. However, even accepting plaintiff's version of the reconciliation, we find no estoppel.
Equitable estoppel, or "estoppel in pais," can be defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. Thus, there are three elements of estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. State ex rel Porterie v. Gulf, Mobile and Northern R. Co., 191 La. 163, 184 So. 711 (1938); American Bank and Trust Co. v. Trinity Universal Insurance Co., 194 So.2d 164 (La.App. 1st Cir. 1966), affirmed, 251 La. 445, 205 So.2d 35 (1967); Babin v. Montegut Insurance Agency, Inc., 271 So.2d 642 (La.App. 1st Cir. 1972).
Mr. Wilkinson has never changed his position in regard to the validity of the marriage contract. He has maintained, if we are to believe him, from the very beginning, that the marriage contract is a valid one. An essential element of estoppel, a change in one's position to his detriment because of reliance, is totally lacking in this case.
Estoppels are not favored in our law. Rodden v. Davis, 293 So.2d 578 (La.App. 3rd Cir. 1974), cert. den., 296 So.2d 832 (La. 1974). Having failed to prove all essential elements of the plea of estoppel, Mr. Wilkinson cannot avail himself of that doctrine. Baton Rouge Lumber Company v. Gurney, 173 So.2d 251 (La.App. 1st Cir. 1965).
Plaintiff's final argument addresses itself to the trial judge's actions in assessing *127 attorney's fees against the community. Plaintiff argues that Mrs. Wilkinson did not adequately prove the value of legal services rendered by her attorneys. The fees, though substantial, are adequately supported by the record. The services of the attorneys were itemized in detail and supported by testimony. We cannot say that the trial judge erred in fixing the amount of the attorney's fees.
Therefore, we hold that a marriage contract, entered into by an unemancipated minor, without the assistance of her father, is null.
Accordingly, the decision of the court of appeal is reversed, and the judgment of the Family Court of East Baton Rouge is reinstated; all costs attributable to the appeal are to be borne by plaintiff.
SANDERS, C. J., dissents, being of the opinion that the judgment of the court of appeal is correct. See La.App., 312 So.2d 107.
SUMMERS, J., dissents and will assign reasons.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by the Court of Appeal, 312 So.2d 107.
NOTES
[1] Article 148 was amended in 1927 to provide that the consent of either parent is sufficient. Planiol Civil Law Treatise, vol. 1, part 1, sec. 747 (1959). Translation from the Code Napoleon or French Civil Code, Translated into English by a Barrister of the Inner Temple; London, 1827, republished by Claitor's Publishing Co., 1960.
[2] "The marriage contracted without the consent of the father and mother, of the ascendants, or of the family meeting, in the case where such consent was required, can be impeached by those only whose consent was required, or by that one of the spouses who was in need of such consent." Translation from the Code Napoleon or French Civil Code, Translated into English by a Barrister of the Inner Temple; London 1827, republished by Claitor's Publishing Co., 1960.
[3] The term "tutor" encompasses a parent who administers the estate of a minor child. La.Civil Code art. 221 (1870). See 47 Tul.L.Rev. 1093 (1973).