Judgment rendered January 12, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,180-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF
EVLYN NORTHINGTON FARRIS ANGUS

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 21,752

Honorable Charles A. Smith, Judge

* * * * *

| | |
|---|---|
| WEEMS, SCHIMPF, HAINES, SHEMWELL & MOORE, APLC By: Kyle A. Moore | Counsel for Appellants, Laura Giacalone and Jane Angus |
| COOK, YANCEY, KING & GALLOWAY, APLC By: William L. Hearne Joseph B. Odom James A. Davis | Counsel for Appellee, Ronald G. Angus |

* * * * *

Before STONE, THOMPSON, and HUNTER, JJ.

**THOMPSON, J.**

This appeal arises from a dispute over the validity of a transfer on death designation form for a brokerage account, which was supplied by the brokerage company and signed by two Louisiana domiciliaries. Evlyn and Ronald G. Angus had been married for many years when the brokerage company managing one of their brokerage accounts created a transfer on death beneficiary form, which they signed. The form in dispute designated one of their daughters and their granddaughter from one of their other children as the beneficiaries of the account. Ronald Angus signed the preprinted acknowledgment contained on the form, which stated that he was not the beneficiary. The account consisted of community funds.

After Mrs. Angus's death, Mr. Angus, as the executor of her estate and the residual legatee, filed a petition to have one-half of the brokerage account declared his portion of their community property and to name himself as the owner of the other one-half of the account as his wife's residual legatee. Trial was held, and the district court found that the transfer on death designation form for the specific brokerage account in question was invalid under Louisiana law, refusing to expand Louisiana's limited itemized list of accounts and assets that may be transferred without probate. For the foregoing reasons, the judgment of the district court is affirmed.

## FACTS

Evlyn Northington Farris Angus ("Mrs. Angus") was born in 1934 and married Ronald G. Angus ("Mr. Angus") on August 17, 1957. During their long and happy marriage, they had three children, namely Jane Northington Angus ("Jane"), Diann Holgate Angus ("Diann"), and Ronald

G. Angus, Jr., all of whom survived Evlyn. Laura Giacalone ("Laura") is Jane's daughter and is therefore Mr. and Mrs. Angus's granddaughter. Laura and her mother, Jane, will collectively be referred to herein as "defendants."

Mrs. Angus died testate on September 20, 2019. On October 11, 2019, Mr. Angus filed a petition to file and execute military testamentary and for confirmation of independent executor. The record reflects that Mrs. Angus had a last will and testament prepared and she signed it on January 25, 2010. Her will left specific bequests of $10,000 to each of her three children and left the remainder of her estate to Mr. Angus, as her universal legatee, which is sometimes referred to as residual legatee.[1] Mr. Angus was appointed the executor of Mrs. Angus's estate and letters to that effect were issued to him on October 14, 2019.

One of Mrs. Angus's assets was a brokerage account with John Hancock Signature Services, Inc. ("John Hancock") that had a balance of $135,741.41 at the time of her death (the "Hancock Account"). Although the Hancock Account was listed by John Hancock as only in Mrs. Angus's name, it is undisputedly a part of Mr. and Mrs. Angus's community estate. The Hancock Account was originally established in 1985 with the Tucker Anthony bank and was transferred to John Hancock on January 2, 1989. On May 7, 2009, when Mrs. Angus was 75 years old and domiciled in Louisiana, John Hancock sent out a transfer on death ("TOD") beneficiary designation form for the Hancock Account (the "TOD Form"). Mrs. Angus

_____

[1] Kathryn Venturatos Lorio, Successions & Donations, 2d. ed. (2009), 10 La. Civ. L. Treatise, § 13:2.

2

filled in the names of the beneficiaries and executed the TOD Form, naming Diann as 50% beneficiary and Laura as 50% beneficiary of the account. Laura's mother, Jane, was named as Laura's custodian because Laura was underage at the time.

The TOD Form required the signature and consent of the account owner's spouse in order for someone other than the spouse to be named beneficiary. Mr. Angus, 76 years old at the time, also signed the TOD Form, consenting to the beneficiary designation. The TOD Form included a boilerplate choice of law provision in small font, which read "the Agreement shall be construed, administered, and enforced according to the laws of the Commonwealth of Massachusetts, except as superceded [sic] by federal law or statute." The TOD Form was prepared by John Hancock and presented to Mr. and Mrs. Angus for their signature. There is nothing in the record to suggest Mr. or Mrs. Angus requested the TOD Form from John Hancock or that any contemporaneous estate planning was being considered in which the Hancock Account or its TOD Form provisions played a part. To the contrary, Mrs. Angus, executed a last will and testament eight months later, in which there was no mention of any intention to exclude the Hancock Account from residue of her estate in favor of her husband.

On January 14, 2020, the trial court issued a partial judgment of possession and an amended partial judgment of possession, in which it ordered that movable assets in the Hancock Account and other accounts will continue under the administration of Evlyn F. Angus and Ronald G. Angus. Mr. Angus filed a rule to show cause for determination of rights to certain succession assets, arguing that he is entitled to the proceeds of the accounts

3

still under administration. Defendants filed an exception of unauthorized use of summary proceedings, exception of improper cumulation of actions, exception of no right of action, and exception of nonjoinder of a party under Article 641. Thereafter, Mr. Angus filed a petition for declaratory judgment and other relief on March 9, 2020, curing the defendants' exception of improper cumulation of actions, unauthorized use of summary proceedings, and exception of nonjoinder.

A bench trial on this matter occurred on October 2, 2020. Diann agreed with her father that Mrs. Angus's will should control the distribution of the estate and made no claim for 50% of the John Hancock Account identified on the TOD Form. Diann testified that Mrs. Angus wrote her a letter, stating that Diann was to file the TOD Form and get the money "transferred immediately after we die." Mrs. Angus stated that Diann would need both of their death certificates. It was clear to Diann from her conversations with her mother and from her mother's correspondence that Mr. Angus was to retain control of the funds in the Hancock Account (and every other asset excluding the specific legacies to each of the three children) during his lifetime.

In its written opinion, the trial court specifically found that the Hancock Account was a part of Mr. and Mrs. Angus's community estate but noted that its ruling was not based on the status of the account as a part of the community. The court found that the TOD Form was not a valid *inter vivos* or *mortis causa* donation because it did not meet the valid form requirements, and Mrs. Angus's subsequent will would have revoked it. The court noted that La. C.C. art. 1968 provides that the cause of an obligation is

4

unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy. The court held that because Louisiana law does not expressly authorize TOD transfers as valid nonprobate transfers, the enforcement of the TOD Form would produce a result prohibited by law or public policy. Thus, the court found the form signed by Mr. and Mrs. Angus was invalid, and Laura was not entitled to receive any proceeds as the beneficiary of those funds.

In a judgment dated January 15, 2021, the trial court held the TOD Form invalid under the laws of the State of Louisiana and declared Mr. Angus the rightful owner of the Hancock Account. The judgment placed Mr. Angus in possession of the Hancock Account and ordered John Hancock to pay the entirety of the proceeds of the Hancock Account to Mr. Angus. This appeal by defendants followed.

## ASSIGNMENTS OF ERROR

Defendants asserts two assignments of error, namely:

**First Assignment of Error:** The trial court erred as a matter of law by finding the decedent's TOD beneficiary designation of her brokerage account with John Hancock was unlawful and violated Louisiana public policy.

**Second Assignment of Error:** The trial court erred as a matter of law by denying the defendants-appellants' exception of no cause of action and estoppel and allowing the plaintiff-appellee to maintain an action to nullify the TOD beneficiary designation under Louisiana law, when the contract contained a choice of law provision making Massachusetts law applicable to the contract.

## DISCUSSION

**First Assignment of Error:** The trial court erred as a matter of law by finding the decedent's TOD beneficiary designation of her brokerage account with John Hancock was unlawful and violated Louisiana public policy.

Defendants argue that the trial court erred in finding that without a specific statute from the Louisiana legislature approving TOD beneficiary designations for brokerage accounts, those contracts contain an "unlawful cause" and are a nullity under Louisiana public policy. Defendants contend that the trial court ignored the numerous laws in Louisiana that allow the nonprobate transfer of various assets by contractual arrangements.

Under Louisiana law, formation of a valid and enforceable contract requires capacity, consent, a certain object, and a lawful cause. *In re Succession of Rhodes*, 40,469 (La. App. 2 Cir. 12/30/05), 918 So. 2d 626, *writ denied*, 06-0440 (La. 5/26/06), 930 So. 2d 23. An obligation cannot exist without a lawful cause. La. C.C. art. 1966. The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy. La. C.C. art. 1968. A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. *Baker v. Maclay Prop. Co.*, 94-1529 (La. 1/17/95), 648 So. 2d 888. This is a question of law subject to a *de novo* review on appeal.

In Louisiana, the ownership of things or property is acquired by succession either testate or intestate, by the effect of obligations, and by the operation of law. La. C.C. art. 870. Louisiana law has carved out only very limited specific exceptions to the general rule that property owned by a decedent at death will pass to her heirs via succession. Those exceptions are

6

the nonprobate disposition of retirement accounts,[2] life insurance,[3] annuities,[4] and deposit and savings accounts, credit union accounts, and savings and loan associations accounts.[5] Many people invest in the above nonprobate transfers due to their tax-favored treatment and for protection from creditor and forced heirship claims. Mendler, Joel, *The NonProbate Revolution*, 50 La. B.J. 274 (2003). In the absence of specific exclusion from Louisiana property and succession law, assets of a decedent remain subject to application of controlling Louisiana law.

The defendants urge this court to consider the TOD Form as a natural extension of the exceptions in Louisiana law listed above, citing the Fourth Circuit Court of Appeal's recent decision in *Succession of Schimek*, 19-1069 (La. App. 4 Cir. 6/10/20), 302 So. 3d 78. The *Schimek* court noted that the Louisiana legislature has neither explicitly authorized nor specifically prohibited TOD transfers for securities accounts, but it has authorized the nonprobate transfer to designated beneficiaries for retirement accounts, life insurance, pensions, and certain bank accounts. The court reasoned that because legislation has allowed similar assets to be transferred contractually, the TOD designation form at issue in that case was not contrary to Louisiana law and public policy. Defendants argue that this reasoning should be applied to the present matter. We disagree.

---

[2] La. R.S. 9:2449.
[3] La. R.S. 22:912(A). Life insurance in Louisiana is treated as *sui generis*, meaning it is of its own kind, in a class by itself, or a legal classification that exists independently of other categorizations.
[4] La. R.S. 22:912(B).
[5] La. R.S. 6:314, 653.1, 766.1, and 1255. These accounts allow for "payable on death" provisions and have seen a number of changes over time. For example, a beneficiary used to be required to have a familial relationship to the depositor, a requirement that was removed in 2009.

A "transfer on death" account provides for the disbursement of funds by banks and certain savings institutions upon a depositor's death, notwithstanding a contrary designation in the depositor's will. Many states have statutorily authorized TOD designation forms based on the Uniform TOD Security Registration Act (the "Uniform Act") drafted by the National Conference of Commissioners on Uniform State Laws in 1989 and amended in 1998. The prefatory note of the Uniform Act states that "TOD registration achieves for securities a certain parity with existing TOD and pay-on-death (POD) facilities for bank deposits and other assets passing at death outside the probate process." The note further states that "the TOD registration under this Act is designed to give the owner of securities who wishes to arrange for a nonprobate transfer at death an alternative to the frequently troublesome joint tenancy form of title."

Louisiana's succession and probate laws are artfully drafted and provide for a process that is exceedingly less complex, much faster, and significantly less expensive than the remainder of our 49 sister states. Louisiana takes a fundamentally different approach to ownership of all types of property. Here, the transition of property through probate of a testament or through intestacy is much faster than that which exists in common law states, the delay and expense of which was the impetus for transfer on death provisions. In Louisiana, it is a solution in search of a problem which does not exist.

The Uniform Act is intended to simplify the process of transferring assets to beneficiaries outside of the probate process in states where that process can be equal parts slow and expensive. The wide adoption of the

Uniform Act by other states is understandable when one considers how lengthy and expensive probate can be in those states. For example, in many states probate fees are based on a tiered system, in which the fees rise as the size of the estate rises or on a percentage system that is based on the size of the estate. Nonprobate transfers avoid the probate court system and allow account holders to pass property quickly and cheaply to their beneficiaries. Financial institutions, seeking to be free from ongoing fiduciary duties and legal expenses in languishing probate proceedings with litigation over control of the funds, were the architects for TOD provisions. The institutions are not necessarily providing estate planning advice; rather, they just want out of the trap. TOD forms provide indemnity for financial institutions when they disburse funds and untangle themselves of squabbling claimants.

However, due to its civil law heritage and the system of universal succession and succession to the person, Louisiana is unlike all other states and does not experience the problems inherent in the common law probate process. Louisiana's probate process is usually easier, quicker, simpler, and less expensive than that in the common law. It is perhaps for these reasons that the Louisiana legislature has declined to adopt the Uniform Act on any of the six different occasions[6] it has considered the legislation over the past 24 years.

This court is aware that in the most recent 2021 Regular legislative session, Louisiana lawmakers approved the Louisiana Uniform Transfer on

---

[6] *See* 1997 La. S.B. 1216; 1998 La. S.B. 45; 1999 La. H.B. 185; 2004 La. S.B. 707; 2005 La. H.B. 213; and 2020 La. H.B. 749.

Death Security Registration Act (the "Louisiana Uniform TOD Act"), which will go into effect on January 1, 2022 and, as such, is not applicable to the TOD Form at issue in the present matter. However, we find it instructive as to the intent of the legislature and the current state of TOD form applications. The comments to the Louisiana Uniform TOD Act show that Louisiana has purposefully and specifically deviated from the Uniform Act, in order to assimilate the Louisiana Uniform TOD Act with other principles of Louisiana law.

For example, Section 1711.5 entitled "Registration on death of owner" specifically states that the registration in the name of the beneficiary on a TOD form has no effect on ownership of the account. The comments to this section note that while it was based on the Uniform Act, it is significantly modified to adapt to Louisiana law. The Louisiana Uniform TOD Act, unlike the Uniform Act, does not transfer the ownership of the security to the named beneficiary upon the death of the registered owner. Rather, it provides that the named beneficiary can reregister the account in his name. Because there is no ownership transferred, the heirs or legatees of the decedent may be entitled to ownership of the security, even if the beneficiary may have the security reregistered in his name. In fact, those heirs or legatees have the ability under Louisiana law to seek a revendicatory action to recover the security or recover damages if recovering the security is not possible. *See* La. C.C. art. 526; La. R.S. 9:1711.6(D).

The alterations made by the Louisiana Uniform TOD Act from the Uniform Act make clear that Louisiana legislators never intended TOD beneficiary forms to supersede a decedent's will or existing Louisiana law.

Prior to this action by the Louisiana legislature, there was obviously no appetite for any TOD provision for brokerage accounts, as evidenced by the frequent refusal by the legislature to adopt the Uniform Act. Importantly, when the Louisiana legislature did act relative to the Uniform Act provisions, it made abundantly clear that the TOD beneficiary forms had absolutely no impact to convey ownership either *inter vivos* or *mortis causa*.

Louisiana has carved out very limited explicit exceptions that allow for a nonprobate transfer of asserts and, at the time of this suit, a TOD beneficiary designation for a brokerage account, such as the John Hancock Account, was not one of them. The recently passed Louisiana Uniform TOD Act does not permit ownership of a security to be passed at death to the decedent; instead, the beneficiary is limited to the ability to reregister the security under his own name. The ownership of the security in Louisiana remains with the decedent's heirs or legatees. We find that this is evidence of the strong public policy favoring the transfer of ownership of assets after death through succession. The civilian law of successions and property is far superior to common law provisions in providing ease in passing assets from one generation to the next and from testator and legatee.

We recognize that this finding appears to be in opposition to the Fourth Circuit's holding in *Schimek*, *supra*, on first reading. However, we find that there are particular factual differences between the current matter and those presented in *Schimek*, *supra*. Specifically, we find it meaningful that Mrs. Angus executed her will eight months after she signed the TOD Form and that her will made no specific mention to ensure exclusion of or to confirm any TOD beneficiary designation of the Hancock Account or the

11

TOD Form. In fact, the will was particularly clear that each of her children would receive a specific bequest of $10,000 from her estate and that the entire remainder of her estate would pass to her husband. There is evidence in the record that Mr. and Mrs. Angus's intention was that the residual estate, including the Hancock Account, would pass to their beneficiaries after both of their deaths.

In *Schimek*, *supra*, the decedent executed the TOD designation form *after* he executed his will and confirmed his beneficiary designations via a letter dated after the TOD form was executed. Further, unlike the Vanguard form presented to the decedent in *Schimek*, *supra*, the TOD Form in the present matter is extremely brief and does not state that it is intended to pass assets to beneficiaries outside of the probate process. The *Schimek* form contains specific reference that it may not be effective and to check with estate planning and tax professionals.

There is evidence in the record that Mrs. Angus intended her will to control the disposition of her assets at death, specifically including her intention that the Hancock Account be disbursed to the beneficiaries after both her and Mr. Angus's deaths. Those intentions were clear to everyone, although they may be inconvenient for Laura, who now wishes to deprive her grandfather of the entire Hancock Account, including that portion of the account comprising his one-half of the community estate.

In sum, Louisiana law has carved out specific and limited exceptions for certain assets to be transferred at death without probate and a TOD designation form from brokerage accounts is not included among them. Louisiana has a strong public policy interest in honoring a decedent's last

12

will and testament, and we find that allowing the TOD Form in the present matter to transfer community assets after Mrs. Angus's death to someone other than the residual legatee identified in her later-executed testament is antithetical to this policy interest. Mrs. Angus was 75 years old when she signed an unsolicited form sent to her by a brokerage account, which form was created by John Hancock not to make estate planning and succession proceedings easier for anyone other than itself. Her last will and testament—and the confirming desire expressed to her daughter for Mr. Angus to have use of those funds—is controlling. For these reasons, we find the TOD Form in the present case is invalid because it violates Louisiana law and public policy. Contracts that violate public policy are null. *Baker*, *supra*. Defendants' first assignment of error is without merit.

**Second Assignment of Error: The trial court erred as a matter of law by denying the defendants-appellants' exception of no cause of action and estoppel and allowing the plaintiff-appellee to maintain an action to nullify the TOD beneficiary designation under Louisiana law, when the contract contained a choice of law provision making Massachusetts law applicable to the contract.**

Defendants argue that the trial court erred in denying their exception of no cause of action because the TOD Form has a choice of law provision designating Massachusetts law applicable to the contract, and Massachusetts law explicitly allows for TOD designation forms.

A peremptory exception of no cause of action questions whether the law extends a remedy to anyone under the factual allegation of the petition. *Villareal v. 6494 Homes, LLC*, 48,302 (La. App. 2 Cir. 8/7/13), 121 So. 3d 1246. The purpose of a peremptory exception of no cause of action is to determine the sufficiency in law of the petition, and the burden of showing

that the plaintiff has stated no cause of action is on the exceptor. *Id.* The public policy behind the burden is to afford the party his day in court to present his evidence. The exception is triable on the face of the petition and the well-pleaded facts in the petition must be accepted as true. *Id.* Generally, an exception of no cause of action must be overruled unless the plaintiff has no cause of action under any evidence admissible under the pleadings. *Id.* The question before this Court is whether, in the light most favorable to the plaintiff, the petition states any valid cause of action for relief.

We find that Mr. Angus's petition has pled sufficient facts to state a cause of action to invalidate the TOD Form under Louisiana law. The petition alleges that the Hancock Account was a part of Mr. and Mrs. Angus's community estate. It further states that the TOD Form is not in valid testamentary form or donative form under Louisiana law. Finally, the petition argues that the TOD Form is not one of the nonprobate transfers recognized by Louisiana law and, as such, is invalid.

We find the defendants' argument that Mr. Angus, the owner of one-half of the funds in the Hancock Account as a part of his community estate, has no cause of action to challenge the validity of the contract because the contract includes a choice of law provision to be unpersuasive. Under Louisiana law, it is generally acceptable for contracting parties to make a choice of state law that will govern the agreement between them. That choice will be given effect, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under la. C.C. art. 3537. La. C.C. art. 3540; *O'Hara v. Globus Medical, Inc.*, 14-1436

14

(La. App. 1 Cir. 8/12/15), 181 So. 3d 69, *writ denied*, 15-1944 (La. 11/30/15), 182 So. 3d 939.

As discussed above, the TOD Form contravenes Louisiana law and public policy, and Mr. Angus clearly had a cause of action to challenge the contract. The choice of law provision embedded in a preprinted form does not change the nature of the community funds. The Louisiana legislature, and at least this Louisiana court, feel no obligation to remove from Louisiana law the community assets and the longstanding Louisiana codal and statutory provisions controlling successions for Louisiana residents. Considering the above, we find the trial court did not err in denying defendants' exception of no cause of action.

Defendants further argue that Mr. Angus should be estopped from challenging Mrs. Angus's estate planning and voiding the TOD Form when he was also a party to the contract. The doctrine of equitable estoppel is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. *Luther v. IOM Co. LLC*, 13-0353 (La. 10/15/13), 130 So. 3d 817; *Hansen v. River Cities Disposal Co., Inc.*, 51,700 (La. App. 2 Cir. 11/15/17), 245 So. 3d 213. The elements of equitable estoppel are a representation by conduct or word, justifiable reliance, and a change in position to one's detriment because of such reliance. *Wilkinson v. Wilkinson*, 323 So. 2d 120 (La. 1975); *Hansen*, *supra*. Estoppel is not favored in Louisiana. A party cannot avail himself of the doctrine unless he proves all essential elements of the plea. *Hansen*, *supra*.

Defendants acknowledge that Laura is a third-party beneficiary of the TOD Form and did not directly rely on the beneficiary designation, thereby admitting that they do not satisfy the elements required for equitable estoppel. Instead, defendants argue that as the executor of Mrs. Angus's estate, Mr. Angus had no right to undo his wife's estate planning, particularly because he signed the TOD Form, and that his wife relied on the beneficiary form. We find this argument unpersuasive. It is undisputed that Mrs. Angus's will naming her husband as her residual legatee was executed less than a year after she signed the TOD Form. There is evidence in the record, in the form of a letter from Mrs. Angus to her daughter Diann, that Mrs. Angus intended the beneficiaries to collect from the Hancock Account only after both Mr. and Mrs. Angus were deceased.

We find there was no injustice in Mr. Angus seeking to enforce his wife's will, which was executed after the TOD Form. Defendants have not proven all elements of equitable estoppel, and we find the application of equitable estoppel to be inappropriate in the present matter.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment. Costs of this appeal as assessed to defendants, Laura Giacalone and Jane Angus.

**<u>AFFIRMED.</u>**