644 So.2d 723 (1994)
James H. "Jim" BROWN, as Commissioner of Insurance for the State of Louisiana
v.
AUTOMOTIVE CASUALTY INSURANCE COMPANY.
No. CA 93 2169.
Court of Appeal of Louisiana, First Circuit.
October 7, 1994.
Writ Denied January 6, 1995.
*725 Bernard Marcus, William E. Wright, Jr., Sheldon W. Snipe, Deutsch, Kerrigan & Stiles, New Orleans, for defendants-appellants A.J. Adolph and Automotive Financial Services, Inc.
Richard A. Curry, Rodolfo J. Aguilar, Jr., McGlinchey, Stafford & Lang, Baton Rouge, for plaintiff-appellee James H. "Jim" Brown, Com'r of Ins.
Before CRAIN, FOIL and WHIPPLE, JJ.
WHIPPLE, Judge.
This is an appeal from a judgment of the trial court ordering liquidation of the defendant insurance company, Car Insurance Company, formerly known as Automotive Casualty Insurance Company and declaring Automotive Casualty Insurance Company, Automotive Financial Services, Inc., and Adolph Enterprises, Inc., d/b/a Automotive Protection Service, a single business enterprise. From this judgment, A.J. Adolph and Automotive Financial Services, Inc. appeal. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
A.J. Adolph is the sole or majority shareholder in all companies involved in this litigation, and controlled the business affairs of these entities. Automotive Financial Services, Inc. (AFS) is a finance company primarily engaged in the financing of insurance premiums. Automotive Casualty Insurance Company (ACIC) is a property and casualty insurance company. Adolph Enterprises, Inc. d/b/a Automotive Protection Services (APS) is the managing general agent of ACIC, and a wholly owned subsidiary.
On August 24, 1992, James H. Brown, Commissioner of Insurance for the State of Louisiana (hereinafter referred to as the Commissioner), filed a petition for conservation and injunctive relief against ACIC. In the petition, the Commissioner sought (1) an order placing ACIC in conservation; (2) the surrender of all records and assets to the Commissioner; (3) an injunction prohibiting ACIC's officers, directors and others from transacting business on behalf of the company or from disposing of its property; and (4) a stay of litigation against ACIC. Additionally, the petition alleged that APS and AFS were owned in common with ACIC and were so closely involved with ACIC that the orders and injunctions sought by the Commissioner should extend to them as well.[1] An order was issued directing the Commissioner to take possession and control of the property, records and accounts of ACIC, and to the extent belonging or relating to ACIC, of APS and AFS. The entities were ordered to surrender to the Commissioner all property, books and records of or related to ACIC. The requested injunctive relief was also granted.
On September 1, 1992, by consent order, ACIC was placed in rehabilitation. The Commissioner was directed to take possession and control of ACIC and APS, and to the extent belonging to, or related to the insurer, of AFS.[2] These entities were directed to surrender to the Commissioner all property, business, books, records, accounts, documents and assets of, or related to ACIC or APS, including the premises occupied by ACIC. The order enjoined the officers, directors, shareholders and employees of ACIC, APS and AFS from transacting business on behalf of ACIC and APS, and from disposing or encumbering property or assets belonging to or related to the business affairs of either corporate entity.
On January 20, 1993, the Commissioner filed a petition and obtained an order placing *726 ACIC in liquidation.[3] The stay order enjoining any suits or proceedings against ACIC was maintained in full force and effect, as well as other prior orders not inconsistent with the order of liquidation.
Subsequently, and in the course of the liquidation proceedings, the Commissioner filed two petitions directly involving AFS, and naming AFS as a defendant. The first petition, filed on February 3, 1993, by the Commissioner in his capacity as liquidator of ACIC, sought injunctive relief against AFS and A.J. Adolph. The petition sought an order declaring AFS part of a single business enterprise with ACIC and APS and an insurer within the meaning of the insurance code. An order was thereafter obtained enjoining AFS and its officers, directors or employees from disposing of the company's property or assets and from transacting business except with the concurrence of the Commissioner. AFS and A.J. Adolph were ordered to show cause why AFS should not be declared part of a single business enterprise with ACIC and APS. By consent order, the matter was set for hearing on April 13-14, 1993, but later was continued to April 26, 1993.
However, on March 26, 1993, prior to the scheduled hearing date, the Commissioner filed the second petition styled "Petition for Conservation and Further Injunctive Relief and for Rule to Show Cause," naming AFS as defendant. The petition alleged that AFS was a captive premium finance company, subject to the provisions of the Insurance Code, citing recently amended provisions of the Louisiana Insurance Code, namely, LSA-R.S. 22:732.1(4) and LSA-R.S. 22:732.2(4).[4] AFS was ordered to show cause, on April 19, 1993, why it should not be rehabilitated and/or liquidated as prayed for by the Commissioner.
On April 19, 1993, the parties appeared for the hearing on the Commissioner's petition of March 26, 1993. A hearing was scheduled to begin the following Monday, April 26, 1993, on the Commissioner's earlier petition of February 3, 1993, which sought a declaration that AFS was a single business enterprise with ACIC and APS. The day before the hearing, A.J. Adolph and AFS delivered to the trial judge, at his residence, a motion to dismiss the March 26, 1993 petition on the grounds that the recently amended statute relied upon by the Commissioner was unconstitutional. Initially, the trial court declined to address the motion on the grounds that the attorney general had not been made a party, and because the motion had not been presented timely. After lengthy arguments by counsel, the court ruled that he would recess the proceedings until the following Monday, April 26, 1993, at which time he would take up the hearing on the February 3rd petition which did not involve constitutional issues and to which no constitutional challenge had been made. The trial court reasoned that a ruling on the single business enterprise in favor of the Commissioner would render moot the subsequently filed petition, and the constitutional attacks made thereto. The proceedings resumed on April 26, 1993, as a hearing on the Commissioner's *727 petition to have AFS declared a single business enterprise with ACIC and APS.
Following the hearing, which was conducted over a six day period, judgment was rendered in favor of the Commissioner, ordering liquidation of the former Automotive Casualty and the liquidation of AFS as it constituted a single business enterprise with ACIC and APS. From this judgment, A.J. Adolph and AFS devolutively appeal.
On appeal, appellants present the following assignments of error:
1. The Commissioner has failed to establish by a preponderance of the evidence, and the trial court erred in holding, that AFS constitutes an SBE with ACIC-APS.
2. The trial court erred in holding that Appellants' challenge to the constitutionality of the 1992 Amendments to the Insurance Code had been mooted by the Commissioner's earlier filed petition, (1) even though the trial court entered an injunction, grounded on said Amendments, which required Appellants to deliver AFS to the Commissioner, and (2) despite the Commissioner's reliance on evidence secured because of Appellants' compliance with said injunction.
3. The trial court erred in continuing to enforce the injunction issued on authority of the 1992 Amendments and simultaneously refusing to consider Appellant's challenge to the constitutionality of those Amendments.
4. The August 21, 1992, Amendments to the Louisiana Insurance Code, as applied to AFS, violate the Louisiana Constitution and may not be enforced against it. Those Amendments are fatally vague, permit impermissible delegation of authority, and conflict with the Banking Code. Accordingly, it was error for the trial court to issue its March 26-April 2 Order under color of authority of the August 21, 1992 Amendments to the Insurance Code.
5. The trial court erred in sustaining the Commissioner's refusals to permit broad pre-trial discovery of, inter alia, the report to the Commissioner prepared by his consultant Sheehan, the thought processes, internal utterances and motives of Chief Deputy Commissioner Riddick and his deputies and consultants, and the examination reports prepared by the Commissioner's certified financial examiners and outside certified public accountants.[5]
6. The trial court erred in permitting the Commissioner to seize AFS and use evidence against Appellants thereby obtained, and thereafter in relying upon such evidence to support its ruling that the seizure issue had been mooted.

NATURE AND EFFECT OF THE "SBE" DETERMINATION
In Green v. Champion Insurance Company, 577 So.2d 249 (La.App. 1st Cir.), writ denied, 580 So.2d 668 (La.1991), this court addressed the significance of the "single business enterprise" concept as it relates to an insurance company and related entities in liquidation proceedings. In Green, we stated that a declaration that affiliated entities constitute a "single business enterprise" automatically vests the Liquidator with ownership of the property belonging to this "single business enterprise" for purposes of liquidation. LSA-R.S. 22:735; Green, 577 So.2d at 256.
Upon finding that a group of affiliated corporations constitute a "single business enterprise," the court may disregard the concept of corporate separateness and extend liability to each of the affiliated corporations to prevent fraud or to achieve equity. When a group of corporations integrate their resources to achieve a common business purpose and do not operate as separate entities, each affiliated corporation may be held liable for debts incurred in pursuit of the general business purpose. Green, 577 So.2d at 259.
When a group of entities constitute a "single business enterprise," the assets of each of the affiliated corporations are pooled together to satisfy the claims of creditors. *728 This allows the Liquidator to gather the assets that are properly includable in the liquidation. The Liquidator's rights and duties with respect to the use of the assets of the "single business enterprise" in the liquidation of an insurance company are specifically provided for in the insurance code. See LSA-R.S. 22:737; Green, 577 So.2d at 260.
The following factors have been utilized to determine whether a group of entities constitute a "single business enterprise":
1. Corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
2. Common directors or officers;
3. Unified administrative control of corporations whose business functions are similar or supplementary;
4. Directors and officers of one corporation acting independently in the interest of that corporation;
5. One corporation financing another corporation;
6. Inadequate capitalization;
7. One corporation causing the incorporation of another affiliated corporation;
8. One corporation paying the salaries and other expenses or losses of another corporation;
9. Receiving no business other than that given to it by its affiliated corporations;
10. One corporation using the property of another corporation as its own;
11. Noncompliance with corporate formalities;
12. Common employees;
13. Services rendered by the employees of one corporation on behalf of another corporation;
14. Common offices;
15. Centralized accounting;
16. Undocumented transfers of funds between corporations;
17. Unclear allocation of profits and losses between corporations; and
18. Excessive fragmentation of a single enterprise into separate corporations.
Green, 577 So.2d at 257-258.
The list is illustrative and is not intended as an exhaustive list of all relevant factors. Also, no one factor is dispositive of the issue of "single business enterprise." Green, 577 So.2d at 258.
Whether an affiliated group of entities constitutes a "single business enterprise" is a question of fact to be decided by the trial court. Green, 577 So.2d at 257. For an appellate court to reverse a factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart, 617 So.2d at 882. Moreover, where conflict exists in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Stobart, 617 So.2d at 882.
Considering the above outlined factors and the scope of our review on appeal, we conclude that the record contains ample evidence to support the trial court's finding that the affiliated entities operated as a single business enterprise. The trial court rendered extensive and detailed reasons for judgment in this case, outlining the factual bases supporting its conclusion that the entities constituted a single business enterprise. As noted by the trial court:
AFS was chartered in the 1970's and operated as a general and limited consumer finance company, primarily in the field of consumer lending, but also did some automobile, personal and real estate lending[.] ACIC was formed in 1986, as an automobile casualty underwriter and operated as such until put under regulation by the Commissioner in August, 1992. APS was chartered about the same time as ACIC[.] [I]t served primarily as operator and manager of the affairs and business of ACIC which had no employees of its own, *729 and also served as a licensed Louisiana insurance broker.
ACIC, AFS and APS are each separately incorporated. A.J. Adolph, Frank Adolph, and Mark Adolph are sole directors of AFS, APS, and ACIC. A.J. Adolph is sole director [of Adolph Enterprises, Inc.] A.J. Adolph, Frank Adolph, and Mark Adolph are President, Secretary and Treasurer of AFS, APS, and ACIC.
Prior to incorporation of ACIC, AFS operated out of its own business location. After incorporation of ACIC, all entities, ACIC, AFS, and APS were moved into a single four story office building. Although the operations of AFS and APS were generally assigned to different floors in the central office building, there were some overlapping of duties and interchange of employees between AFS and APS.
Following incorporation of ACIC, the bulk of AFS's business rapidly changed from primarily consumer financing to financing premiums on policies written by ACIC. At the time the Commissioner instituted this action against ACIC, 98% of AFS's business consisted of financing premiums on ACIC policies.
The record reflects that each corporation was separately incorporated, maintained separate bank accounts and separate ledgers, filed separate income tax returns, kept separate minute books and held separate board meetings, but that records of all companies were kept and maintained by a single central computer system.
* * * * * *
When the activities of ACIC, APS, and AFS were located in a single office building, all companies used the same mailing address, same telephone number and all employees wore the same uniforms. Mail for all three concerns was routed to APS, sorted and referred to the concern involved, [and] incoming telephone calls were handled in the same manner. The computer system owned by AFS was maintained and repaired by employees of APS. Employees of the three corporations participated in the same health and insurance plans. A common employee manual was issued by all three companies.
Separate payroll accounts were maintained by APS and AFS but all accounting procedures were performed by employees of AFS. Accounting matters of all concerns were directed and handled by Time Riley, Comptroller for all three corporations. The record does not reflect the cost allocation thereof, if any.
* * * * * *
Olivia Lachney, employee of AFS, was occasionally instructed by Frank Adolph to make cash payments by AFS to APS with no documentation, note or other evidence of collateral as security.
At year end 1988, an unusual circular transfer of funds between those corporations occurred. Close analysis thereof reveals a plan to misrepresent the year end capital account of ACIC by $1,000,000.00 for reporting purposes. On December 29, 1988, ACIC issued its check dated that day, signed by Frank Adolph, payable to AFS for $4,000,000.00 for the purchase of AFS certificates of deposit. At that time there was a balance of $10,000.00 in ACIC's checking account. That same day A.J. Adolph issued an AFS check in the amount of $4,000,000.00 to APS as a loan. At this time AFS's checking account was overdrawn by $94,474.91, and its balance sheet showed a negative net worth. Also on December 29, 1988, Mark Adolph issued APS checks to ACIC for $3,000,000.00 and $1,000,000.00, respectively, for the purchase of $1,000,000.00 non-voting stock in ACIC and in reduction of APS's debt to ACIC.
* * * * * *
The record is replete with testimony that APS extended large loans to A.J. Adolph with no documentation or evidence of a note, collateral, or corporate resolution of authority to do so.
A.J. Adolph wrote checks to himself on the corporations at will as evidenced by a check for $400,000.00 and one for $350,000.00 payable to Adolph's attorney in trust for Adolph, with no evidence of authority *730 to draw the check and no evidence as to the nature of the trust involved.
* * * * * *
In this instance[,] the record shows unified administrative control, common offices in a single building, interchange of employees between different companies, substantial identi[t]y of ownership, common directors and officers, central accounting in a single computer system, lack of independent direction of each company for the benefit of that company alone, inter-corporate financing designed to promote the entire system rather than the integrity of each individually, one corporation relying on another for 98% of its business, and one corporation using property of another as its own.
The evidence also establishes centralized accounting under direct control of a single individual, transactions conducted on other than arms length basis, transfers of funds without property security or collateralization and with no documentation whatsoever.
Most importantly, the Court finds absolute control of all corporations by a single individual, A.J. Adolph, who wrote checks at will with no documentation or authorization and for undisclosed purposes.
The decisive issue is not what AFS was originally, but what i[t] has become by virtue of its affiliation with ACIC and APS. The record is clear that ACIC, AFS, and APS, were affiliated for the sole purpose of promoting the business and affairs of ACIC as an automobile casualty underwriter, and the Court so finds as a fact.
After careful and thorough review of the extensive testimony and exhibits presented herein, we find that the above facts, as found by the trial court, are amply supported by the record. From our review of the record, we are unable to conclude that these findings are manifestly erroneous or clearly wrong. The trial court had the opportunity to view the demeanor of the witnesses as they testified, and thus was in the best position to determine the credibility of the witnesses and to resolve conflicts in testimony presented by the lay and expert witnesses explaining the transactions and structure of the businesses involved in these proceedings.
Considering the record herein, we find no error in the trial court's conclusion that ACIC, APS and AFS constituted a single business enterprise or in its order for liquidation of AFS as part of ACIC.
These assignments of error are without merit.

BREACH OF CONTRACT AND EQUITABLE ESTOPPEL
Appellants argue on appeal that in September of 1992, an agreement was reached between the parties, to the effect that the Commissioner would not take action against AFS, would not seek control of AFS, and would not disturb A.J. Adolph's operation of AFS. Appellant argues that the Commissioner breached this agreement in seeking an order declaring that AFS was part of a single business enterprise with ACIC and APS. We find no support in the record for these claims.
A contract is formed by the consent of the parties established through offer and acceptance. LSA-C.C. art. 1927. Thus, an enforceable contract requires a meeting of the minds. Howell v. Rhoades, 547 So.2d 1087, 1089 (La.App. 1st Cir.1989). Appellants acknowledge that the Commissioner never specifically stated that he would not seek control of AFS. However, relying on article 1942 of the Louisiana Civil Code, appellants contend that the Commissioner's silence and actions under the circumstances establishes a meeting of the minds, and results in an enforceable contract whereby the Commissioner agreed not to seek control of AFS.
The record herein reveals that in September of 1992, after ACIC was placed in rehabilitation by consent order, the parties began negotiations regarding AFS. The Commissioner wanted control of AFS, and opined that a premium finance company was necessary for the successful rehabilitation of ACIC. Thus, the Commissioner requested that AFS be surrendered voluntarily. The Adolphs declined to do so. In mid-September of 1992, the Commissioner proposed a *731 second consent order whereby AFS would be voluntarily surrendered, but the Adolphs refused to execute the consent order. During the course of the negotiations, A.J. Adolph made an offer to sell AFS to ACIC, which offer was rejected by the Commissioner. Instead, the Commissioner obtained a license to operate a separate finance company. All negotiations concerning the voluntary transfer of AFS were unsuccessful, and at some point thereafter the negotiations were discontinued.
Appellants contend that certain actions taken during the negotiations resulted in an implied contract or agreement that control of AFS would not be sought by the Commissioner. According to appellants, the Commissioner's filing of a petition against AFS, seeking a declaration that AFS constituted a single business enterprise with ACIC and APS, constituted a breach of this contract.
After a careful review of the evidence, we are unable to conclude that there was a meeting of the minds, resulting in an enforceable contract between the Commissioner and appellants, or prohibiting the Commissioner from seeking or gaining control of AFS, in connection with the liquidating of ACIC. The testimony of AFS's former attorney, Mr. Kenneth Pickering, who represented AFS during the course of the negotiations and continued the representation through the date of trial, suggests the contrary. Mr. Pickering acknowledged that no agreement existed and testified that the Commissioner never specifically represented to AFS that action would not be taken against AFS in the future. While it is clear from the record that control of AFS was the subject of negotiations in September of 1992 and that the Commissioner attempted to gain control of AFS without the necessity of litigation, it is also clear that those attempts were unsuccessful. Moreover, there is nothing in the record to show that an agreement was ever reached between the parties that further efforts to obtain control of AFS would not be made in the future. This argument is likewise without merit.
The appellants also urge on appeal that the doctrine of equitable estoppel bars the Commissioner's seizure of AFS. Appellants argue that this doctrine does not allow the Commissioner to "renege on its undertakings, when the other party has reasonably relied on them to his detriment." The Commissioner argues that the elements necessary to invoke the doctrine of equitable estoppel have not been proven.[6]
Equitable estoppel can be defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975). Thus, there are three elements of estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. Wilkinson, 323 So.2d at 126. Moreover, estoppels are not favored in our law, and in order to avail oneself of the doctrine, all essential elements of the plea of estoppel must be proven. Wilkinson, 323 So.2d at 126.
We find that appellants have failed to prove the threshold element required to invoke the doctrine of equitable estoppel. There is nothing in the record to show that the Commissioner represented, by conduct or word, that no action would be taken against AFS. As previously noted herein, AFS's attorney testified that the Commissioner never represented to AFS that further action or litigation against AFS would be avoided.
Accordingly, this argument is also without merit.

CONSTITUTIONAL ISSUES
In reasons for judgment, the trial court stated:

*732 [T]he Court declined to consider the issues o[f] unconstitutionality ... in this instance on the ground that they are inapplicable herein under the circumstances and also because if the Commissioner is entitled to place AFS under regulation herein pursuant to the single business enterprise concept as set forth in Green ..., these issues would become moot in the other action filed by the Commissioner against AFS.
On appeal, appellants contend that the trial court erred in failing to address the constitutional challenges presented and in concluding that the constitutional arguments advanced were rendered moot by his ruling in favor of the Commissioner on the single business enterprise theory.
Appellants argue that the Commissioner "seized" AFS under the authority of the court order rendered in connection with the petition for conservation, brought pursuant to LSA-R.S. 22:732.1(4) and LSA-R.S. 22:732.2(4), which they allege are unconstitutional statutes. Appellants contend that if indeed the statute is unconstitutional, the evidence obtained as a result of this seizure was inappropriately utilized by the Commissioner to prove that AFS constituted a single business enterprise with ACIC and APS. According to appellants, the evidence could not have been obtained except for the order and seizure effected pursuant to the allegedly unconstitutional statutes.
We disagree with appellants' contention that the evidence utilized by the Commissioner to prove the single business enterprise issue was obtained solely on the authority of the order issued in connection with the petition for conservation. The voluminous record herein contains numerous pleadings and petitions which allowed the Commissioner to obtain orders affecting AFS.
In connection with the Commissioner's petition for conservation filed against ACIC on August 24, 1992, the trial court directed the Commissioner of Insurance "to take possession and control of the property, business, books, records, and accounts of, ... [ACIC], and, to the extent belonging or related to said insurer, of [AFS]." This order further directed that "[AFS] ... surrender to the Commissioner of Insurance ... the possession and control of any and all property, business, books, records, accounts, documents, and assets of or related to [ACIC]." Moreover, by consent order, wherein ACIC was placed in rehabilitation, these same orders were directed by the trial court against AFS. We cannot agree with appellants' argument that the evidence obtained by the Commissioner was obtained solely by a court order executed in connection with the Commissioner's petition for conservation against AFS.
Additionally, we note that appellants present these arguments for the first time on appeal. Issues not submitted to the trial court for decision will generally not be considered by the appellate court on appeal. Roadrunner Motor Rebuilders, Inc. v. Ryan, 603 So.2d 214, 219-220 (La.App. 1st Cir. 1992). At no time during the course of these proceedings in the lower court did appellants raise this challenge to the trial court's orders. At the hearing of this matter, these issues were never presented to the trial court. In fact, appellants' counsel stated:
[W]e do not have a constitutional ... objection... [to] the right of the Commissioner to attempt to establish that these two entities constitute a single business enterprise. What we are dealing with this morning is the Commissioner's assertion in his petition that he has the right to rehabilitate a finance company without regard to whether the finance company is a single business entitya single business enterprise with the associated insurance company.
As the record shows, appellants' challenge to the constitutionality of the methods by which the Commissioner obtained the records was not presented to the trial court. The record is devoid of any objection by appellants, on grounds of constitutionality or otherwise, to the introduction of the evidence at trial which established that these entities formed a single business enterprise. Even assuming, arguendo, that these arguments were preserved for appellate review, we find no error by the trial court.
These assignments of error also are without merit.

*733 CONCLUSION
For the above and foregoing reasons, the June 4, 1993 judgment in favor of plaintiff, James H. "Jim" Brown, as Commissioner of Insurance for the State of Louisiana, and against defendants, A.J. Adolph and Automotive Financial Services, Inc., is hereby affirmed. All costs of this appeal are assessed against the defendants.
AFFIRMED.
NOTES
[1] The petition also sought to have the injunctions extended to other alleged affiliated corporations, namely, Arrow Paint and Body Shop, Bayou State Insurance Agency and Automotive National Life Insurance Company.
[2] In addition, the Commissioner was directed to take control of Arrow Paint and Body Shop, and Automotive National Life Insurance Company, to the extent belonging to, or related to, ACIC.
[3] Prior to the filing of the Petition for Liquidation, the Commissioner obtained an order authorizing the change of the name of ACIC to Car Insurance Company and authorizing the creation and capitalization of a new insurance company as a subsidiary of the receivership estate, which company was named Automotive Casualty Insurance Company. Thus, the order dated January 20, 1993, changed the caption of the proceedings to reflect the new name of the insurance company: Car Insurance Company in receivership, formerly known as Automotive Casualty Insurance Company. For purposes of our discussion, we will continue to refer to the defendant insurance company as ACIC.
[4] LSA-R.S. 22:732.1(4) provides, in pertinent part:

The proceedings authorized by this Part shall be applied to:
* * * * * *
(4) Agents, brokers, or insurers, or any person or persons acting as an agent, broker, or a managing general agent of an insurer, any reinsurer, any holding company owning an insurer or any captive premium finance company, or any related entity, whether or not such persons are licensed to do an insurance business in this state.
LSA-R.S. 22:732.2(4) provides that, "For purposes of this Part, any other persons included under R.S. 22:732.1 shall be deemed to be insurers."
[5] Appellants have failed to brief this assignment of error. Assignments of error not briefed are considered abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4; Winget v. Colfax Creosoting Co., 626 So.2d 370, 372 (La.App. 3rd Cir. 1993), writ denied, 93-3047 (La. 2/4/94); 633 So.2d 580.
[6] The Commissioner also contends that the doctrine of equitable estoppel is not applicable in this case, as the Commissioner was acting in a sovereign capacity as opposed to a proprietary capacity. Without making a determination of the merits of this legal argument, we find that appellants cannot recover under the doctrine of equitable estoppel because they have failed to prove the elements necessary to invoke the doctrine.