889 So.2d 317 (2004)
Charles LEE
v.
CLINICAL RESEARCH CENTER OF FLORIDA, L.C., Clinical Research Center, Clinical Research Center of Mississippi, L.L.C., Florida Medical Management, L.C., Dale Kaliszeski, Stephen I. Klein, Audubon Internal Medicine Research Center, L.L.C.
No. 2004-CA-0428.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 2004.
*319 Donglai Yang, The Law Offices of Donglai Yang, LLC, New Orleans, LA, for Plaintiff/Appellant, Charles Lee.
James M. Garner, Peter L. Hilbert, Jr., Howard T. Boyd, III, Terri B. Loughlin, Sher Garner Cahill Richter Klein Mcalister & Hilbert, L.L.C., New Orleans, LA, for Defendants/Appellees, Clinical Research Center of Florida, L.C.; F/V Medical, L.L.C.; Florida Medical Management, L.C.; Dale Kaliszeski, David Voelker, and Audubon Internal Medicine Research Center.
(Court composed of Judge MICHAEL E. KIRBY, Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO, JR.).
*320 LEON A. CANNIZZARO, JR., Judge.
The plaintiff, Dr. Charles Lee, sued several limited liability companies and two individual members of those companies in connection with an employment contract he executed with Clinical Research Center of Florida, L.C. ("CRC Florida"). The defendants filed a motion for summary judgment, which was granted. Dr. Lee is now appealing the summary judgment against him.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
This case arises out of an alleged breach of an employment contract between CRC Florida and Dr. Lee. CRC Florida was formed for the purpose of conducting clinical drug trials on human test subjects. Dr. Lee was originally employed by F/V Medical, d/b/a Clinical Research Center, L.L.C. ("CRC Louisiana"[1]), another company that conducted clinical drug trials. When CRC Florida began its operations, Dr. Lee's employment with CRC Louisiana ended, and he was hired by CRC Florida.
Dr. Lee, who holds a doctoral degree in pharmaceutical chemistry, executed an employment contract with CRC Florida. Dr. Lee was named senior vice president of the company, and his duties under the contract included developing business for the company. He was responsible for obtaining business by contacting pharmaceutical companies that desired to obtain approval for marketing new drugs to the public. He obtained contracts with the pharmaceutical companies whereby CRC Florida would conduct drug trials for drugs the companies were hoping to market. These drug trials were a step in the process for obtaining approval to market a drug to the public, and they were designed to determine the safety and efficacy of the drugs being tested. The principal investigator in the studies was Dr. Din-on Sun, a physician, who was responsible for the clinical aspects of the research studies, including the monitoring of the human subjects used in the trials.
Dr. Lee's employment contract with CRC Florida had a five-year term. There was also a clause in the contract providing that if Dr. Lee's employment were terminated without cause, he would be entitled to twelve months severance pay. Approximately two and a half years after Dr. Lee's contract with CRC Florida was confected, Dr. Sun developed a terminal illness. Because of his illness, Dr. Sun withdrew from the ongoing drug trials and did not undertake any new drug trials.
After Dr. Sun was no longer able to perform the clinical trials for CRC Florida, Dr. Lee was notified that CRC Florida would be discontinuing its business but that he would be paid as long as CRC Florida had funds available to pay him. Dr. Lee received his last payment from CRC Florida approximately four months after he was told that CRC Florida would be discontinuing its operations, and he never received any severance pay. Dr. Lee was offered employment with CRC Louisiana. Dr. Lee would be permitted to work from his home in Florida so that he would not have to relocate, and he would receive the same salary and benefits as he had received from CRC Florida. Dr. Lee, however, declined the offer from CRC Louisiana.
Dr. Lee filed suit against CRC Florida, CRC Louisiana, Clinical Research Center of Mississippi, L.L.C. ("CRC Mississippi"), *321 Florida Medical Management, L.C., Audubon Internal Medicine Research Center. L.L.C. ("Audubon Research"), Dale Kaliszeski, and David Voelker[2] for breach of the employment contract with CRC Florida. Dr. Lee alleged that all of the companies that he sued constituted a single business enterprise and were, therefore, all responsible for the damages he suffered from the early termination of his contract with CRC Florida.
All of the defendants filed a motion for summary judgment. CRC Florida claimed that it was excused from the employment contract with Dr. Lee, because there was an impossibility of its performance after Dr. Sun was no longer able to conduct drug trials. Additionally, CRC Florida claimed that the employment contract was terminated, because Dr. Lee's performance under the contract was deficient. The remainder of the defendant entities argued that they were not part of a single business enterprise with CRC Florida and were, therefore, not responsible for CRC Florida's performance of the employment contract. The individual defendants argued that they were exempt from liability, because they were not parties to the employment contract, and they were not members of CRC Florida.
The trial court granted summary judgment in favor of all of the defendants. Dr. Lee is now appealing that judgment.

STANDARD OF REVIEW
In Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, the Louisiana Supreme Court discussed the standard of review of a summary judgment as follows:
Our review of a grant or denial of a motion for summary judgment is de novo. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action...." La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows:
The burden of proof remains with the movant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C.P. art. 966(C)(2).
99-2181, 99-2257, p. 7, 755 So.2d at 230-31. See also Shelton v. Standard/700 Associates, XXXX-XXXX (La.10/16/01), 798 So.2d 60. Therefore, we must conduct a de novo review in the instant case.

DISCUSSION

Assignments of Error
Dr. Lee has raised four assignments of error on appeal. The first assignment of error relates to the trial court's analysis under the Green case. The second assignment alleges that the trial court *322 erred in dismissing CRC Florida from the case. The third assignment asserts that the trial court judge abused his discretion in granting the motion for summary judgment. The final assignment claims that the trial judge erred in denying a motion to compel the production of certain banking and tax records sought by Dr. Lee.

ASSIGNMENT OF ERROR NO. 1: The trial judge was wrong as a matter of law, because he relied solely upon one factor, i.e., substantial identity of ownership, and failed to discuss the other factors used in the Green decision.
The argument presented by Dr. Lee for holding the defendants collectively accountable for the alleged breach of his employment contract with CRC Florida is that they were all operating as a single business enterprise. The single business enterprise concept was originally formulated in Louisiana in Green v. Champion Insurance Co., 577 So.2d 249 (La.App. 1st Cir.1991), where the Louisiana First Circuit Court of Appeal stated as follows:
Prior Louisiana jurisprudence deals primarily with piercing of the corporate veil to hold a parent corporation solidarily liable for the debts of its subsidiary. The trial court in this case utilized the "single business enterprise" theory to disregard the identities of a group of separate corporations. Such a situation has not been specifically addressed by our courts.
577 So.2d at 257.
The First Circuit then listed the following factors that can be used to support an argument that a group of entities constitutes a single business enterprise:
1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
2. common directors or officers;
3. unified administrative control of corporations whose business functions are similar or supplementary;
4. directors and officers of one corporation act independently in the interest of that corporation;
5. corporation financing another corporation;
6. inadequate capitalization ("thin incorporation");
7. corporation causing the incorporation of another affiliated corporation;
8. corporation paying the salaries and other expenses or losses of another corporation;
9. receiving no business other than that given to it by its affiliated corporations;
10. corporation using the property of another corporation as its own;
11. noncompliance with corporate formalities;
12. common employees;
13. services rendered by the employees of one corporation on behalf of another corporation;
14. common offices;
15. centralized accounting;
16. undocumented transfers of funds between corporations;
17. unclear allocation of profits and losses between corporations; and
18. excessive fragmentation of a single enterprise into separate corporations.
577 So.2d at 257-258. The First Circuit also stated that the list is not intended to be an exhaustive list of all relevant factors and that no one factor is dispositive in determining whether there is a single business enterprise. Id. See also Brown v. Automotive Casualty Insurance Co., 93-2169 (La.App. 1 Cir. 10/7/94), 644 So.2d 723.
*323 In the Brown case the First Circuit held that a court may "disregard the concept of corporate separateness and extend liability to each of the affiliated corporations" for the purpose of preventing fraud or achieving equity when the court has found that a group of affiliated corporations constitutes a single business enterprise. 644 So.2d at 727. The First Circuit stated that "[w]hen a group of corporations integrate their resources to achieve a common business purpose and do not operate as separate entities, each affiliated corporation may be held liable for debts incurred in pursuit of the general business purpose." Id. Finally, the First Circuit stated that "[w]hen a group of entities constitute [sic] a `single business enterprise,' the assets of each of the affiliated corporations are pooled together to satisfy the claims of creditors." Id. Both the Green case and the Brown case held that a determination that an affiliated group of entities constitutes a single business enterprise is a factual finding. Id. at 728.
This Court has also recognized the single business enterprise theory as a vehicle for holding a group of affiliated entities responsible for the obligations of one of the entities. In In re New Orleans Train Car Leakage Fire Litigation, 96-1677 (La.App. 4 Cir. 3/5/97), 690 So.2d 255, this Court stated that the legal fiction that a corporation is a distinct legal entity separate from the individuals who comprise it may be disregarded when a corporation is organized and controlled in such a way that it is merely an adjunct of another corporation. In such a case one corporation is considered to be the business conduit or alter ego of another. Courts can pierce the corporate veil[3] of a corporation to impose liability on one corporation for the acts of another corporation Id. at 257. In addition to piercing the corporate veil to disregard a corporate identity, courts have used the single business enterprise theory to extend liability beyond a separate entity. Id. This Court in In re New Orleans Train Car Leakage Fire Litigation adopted the list of factors used in the Green case for determining the existence of a single business enterprise. Id. See also Berg v. Zummo, XXXX-XXXX (La. 4 Cir. 7/02/03), 851 So.2d 1223, cert. denied, 2003-2209 (La.11/21/03), 860 So.2d 546.
Whether or not a group of entities comprises a single business enterprise is a factual inquiry. Therefore, we must consider the relationship that CRC Florida had with each of the entities that are defendants in this case. Each of these defendants, all of which are limited liability companies, is discussed below.

CRC LOUISIANA
CRC Louisiana was the first of the defendant companies to be formed. Its operating agreement provided that its members were David R. Voelker, Juanita D. Frantzen, David J. Erath, and MGR Partners, L.L.C. CRC Louisiana entered into an asset purchase agreement pursuant to which it purchased all of the assets of Clinical Research Center, A Medical Corporation. CRC Louisiana purchased the assets of the medical corporation so that CRC Louisiana could operate a drug testing business.
The operating agreement provided as follows with respect to the business of the company:

*324 The business and purpose of the Company shall be to conduct or promote a business for the primary purpose of the performance of clinical trials on human test subjects to gather the data necessary to evaluate the effectiveness and safety of any drug seeking approval from the federal Food and Drug Administration or performing similar activities in connection with drugs seeking approval outside of the jurisdiction of the United States....
The operating agreement further provided that although the company was organized under the name F/V Medical, the company could do business under another business name, such as Clinical Research Center. That name was, in fact, used by F/V Medical.
The principal place of business was designated as 1500 Energy Center, 1100 Poydras Street, New Orleans, Louisiana. Mr. Voelker was appointed the company's manager.
Dr. Lee contends that CRC Louisiana was operating as a single business enterprise with CRC Florida. In support of his contention he alleged that CRC Louisiana exerted administrative control over CRC Florida, as well as over CRC Mississippi. Although the accounting for these companies was done in a centralized office, the evidence shows that each of the companies maintained a completely separate financial identity. They had their own books, maintained individual bank accounts, earned their own income, paid their own bills, and filed separate tax returns. We do not find that the centralized accounting system utilized by the companies caused them to be operating as a single business enterprise.
Dr. Lee also contends that because CRC Louisiana's website advertised that CRC Florida, CRC Mississippi, and Audubon Research were affiliated companies using the same standard operating procedure, the same institutional review board, one contract for all outpatient drug trials, and one budget, these companies operated as a single business enterprise. The facts in the record show otherwise, however. Although CRC Florida, CRC Mississippi, and CRC Louisiana all conducted drug research, they did different types of research using different types of patients and protocols[4], usually with different drug companies. The evidence in the record further shows that these companies did not use the same standard operating procedure and that they did not use the same institutional review board[5] in most cases.
In his deposition, Mr. Kaliszeski explained that the website advertisement did not accurately reflect the relationship among the defendant companies. Rather, it envisioned a situation that might occur if a particular drug company wanted to have a drug study undertaken by more than one of the defendant companies. In that case, these companies could provide a single institutional review board to review all of the studies. If the drug company had the same protocol, then the standard operating procedure for the protocols would be the same. Essentially, the website was an advertisement that sought to attract drug companies that might want to undertake *325 studies at more than one of the defendant companies. Therefore, the advertising claims made on CRC Louisiana's website with respect to the matters discussed above are not dispositive in determining whether the defendant companies are, in fact, operating as a single business enterprise.
Dr. Lee additionally claims that CRC Louisiana and CRC Florida, as well as Audubon Research and CRC Mississippi, had "substantial identity of ownership," one of the factors used in the Green case for determining whether entities are operating as a single business enterprise. Although Dr. Lee argues that the determinative factor in evaluating "substantial identity of ownership" is the identity of the owners, not the interest owned, we note that in the Green case, the First Circuit qualified the "substantial identity of ownership" factor by adding the phrase, "that is, ownership of sufficient stock to give actual working control." 577 So.2d at 257 (Emphasis added.) In the instant case we do not find that there was sufficient identity of ownership to meet the actual working control criteria, because the common members of the defendant entities did not have sufficient controlling interests to meet the "substantial identity of ownership" factor established in the Green case.[6]
Another factor that Dr. Lee contends can be used to conclude that the defendant entities operated a single business enterprise is that loans were made to CRC Florida by CRC Louisiana on two occasions. We do not find that the loans lead to the conclusion that there was a single business enterprise. All of the loans were documented, arms-length transactions between the obligor and the obligee.
Dr. Lee argues that the payment of a portion of his salary by CRC Louisiana is evidence that CRC Louisiana and CRC Florida were operating as a single business enterprise. In support of this argument he relies on the factor listed in the Green case stating that the payment of the salaries of one corporation by another corporation is a factor to consider in determining whether a single business enterprise exists. In the instant case, CRC Louisiana was not paying the salary of an employee of another entity. CRC Louisiana was paying the salary it owed to Dr. Lee for work that he performed for CRC Louisiana. The compensation paid by CRC Louisiana was not compensation owed by CRC Florida that was paid by CRC Louisiana. This distinction is critical, and we do not find that the payments by CRC Louisiana to Dr. Lee resulted in the operation of a single business enterprise by CRC Louisiana and CRC Florida.
We do not find that the arguments advanced by Dr. Lee in connection with CRC Louisiana meet the criteria established in the Green case for the finding of a single business enterprise. Therefore, *326 we find that CRC Louisiana and CRC Florida were not operating as a single business enterprise.

CRC Mississippi
This limited liability company was formed approximately a year and a half after CRC Louisiana was formed. The operating agreement[7] provided that CRC Mississippi was formed for the purpose of developing a business in the Jackson, Mississippi metropolitan area to perform clinical drug trials on human subjects. The members of the company were two other limited liability companies, Mississippi Medical Holdings, L.L.C. and MGR Partners, L.L.C.
The principal place of business was designated as 1500 Energy Center, 1100 Poydras Street, New Orleans, Louisiana. Mississippi Medical Holdings, L.L.C. was appointed the company's manager.
Although, as Dr. Lee has claimed, the operating agreements of CRC Mississippi and certain other of the defendant entities stated that the principal places of business for these entities was at the same location, this is certainly not sufficient evidence that the entities operated as a single business enterprise. The evidence in this case shows that the coordinator and director of research at CRC Mississippi was located in Jackson, Mississippi and that another person actually managed the business. Additionally, the evidence shows that CRC Mississippi maintained its own bank accounts and paid its own expenses and taxes.
CRC Mississippi and CRC Florida did have a common member, MGR Partners. MGR Partners, however, did not own a controlling interest in either CRC Mississippi or CRC Florida. The fact that the two companies had a common member, particularly one with a non-controlling interest, did not cause the companies to be operating as a single business enterprise.
There is no evidence, other than the fact that CRC Mississippi and CRC Florida had a common member, that the factors in the Green case were present in the relationship between these two entities. Therefore, we find that CRC Mississippi and CRC Florida were not doing business as a single business enterprise.

CRC Florida
This limited liability company was formed approximately six months after CRC of Mississippi was formed. The operating agreement provided that it was formed for the purpose of developing one or more sites in Orlando, Florida "to engage in the performance of clinical trials on human test subjects to gather the data necessary to evaluate the effectiveness and safety of any drug seeking approval from the federal Food and Drug Administration." The members of CRC Florida were Dr. Sun, MGR Partners, L.L.C., and Florida Medical Management.
The registered office of CRC Florida was designated as 1500 Energy Center, 1100 Poydras Street, New Orleans, Louisiana, but its principal business office was designated as 147 South Liberty Street, New Orleans, Louisiana, which was where the actual business of the company was conducted. Florida Medical Management was the manager of the company, and under the company's operating agreement, the members did not have the power to remove Florida Medical Management as the manager.
Although the trial court judge did not find that any of the other defendant *327 entities were operating with CRC Florida as a single business enterprise, he granted summary judgment in favor of CRC Florida. Clearly, CRC Florida owed certain obligations to Dr. Lee under the employment contract between them. A genuine issue of material fact remains regarding whether CRC Florida is excused from those obligations, particularly the obligation to pay severance pay to Dr. Lee. Therefore, the trial court improperly dismissed CRC Florida from this case. Whether CRC Florida is legally excused from performing its obligations under the employment contract was not established in the motion for summary judgment, and this must be determined after a trial on the merits.

Florida Medical Management
This limited liability company was formed when CRC Florida was formed. The operating agreement provided that it was formed for "the primary purpose of acquiring interests in Clinical Research Center of Florida, L.C. and becoming the manager of Clinical Research Center of Florida, L.C." The members of Florida Medical Management were Voelker Management, L.L.C., Juanita D. Frantzen, David J. Earth, Dale Kaliszeski, and Linda Meffert.
The principal place of business was designated as 1500 Energy Center, 1100 Poydras Street, New Orleans, Louisiana. Voelker Management, L.L.C. was appointed the company's manager.
In accordance with its stated purpose, Florida Medical Management acquired a non-controlling interest in CRC Florida. Additionally, Florida Medical Management loaned money to CRC Florida when CRC Florida needed additional funds. The loans were documented and bore interest.
We find no evidence in the record that Florida Medical Management was operating as a single business enterprise with CRC Florida. Its ownership interest and its investment in CRC Florida do not constitute the operation of a single business enterprise with CRC Florida.

Audubon Research
This limited liability company was formed approximately two and one half years after CRC Florida and Florida Medical Management were formed. The members of Audubon Research were Audubon Internal Medicine (A Professional Medical Corporation) and CRC Louisiana. The operating agreement for Audubon Research stated that the purpose for forming Audubon Research was to utilize CRC Louisiana's skill in operating a clinical trials business and to use Audubon Internal Medicine's physicians and patient base to "engage in the performance of Phase II-IV clinical trials on human test subjects to gather the data necessary to evaluate the effectiveness and safety of any drug seeking approval from the federal Food and Drug Administration."
The registered office of Audubon Research was 650 Poydras Street, Suite 2710, New Orleans, Louisiana, and its principal place of business was 147 South Liberty Street, New Orleans, Louisiana. The company was managed by a management committee consisting of a manager appointed by CRC Louisiana and a manager appointed by Audubon Internal Medicine.
Although Dr. Lee argues that Audubon Research acted as a single business enterprise with CRC Florida, the evidence shows that Audubon Research did not begin its business operations until after CRC Florida began completing its ongoing clinical trials and was no longer accepting any new trials as a result of Dr. Sun's illness. Therefore, we find that Audubon Research was not acting as a single business enterprise with CRC Florida.

*328 Individual Defendants

The individual defendants in this case, Dale Kaliszeski and David Voelker, had no privity of contract with Dr. Lee under the employment agreement, and Dr. Lee has failed to show that they breached the contract. In the case of Mr. Kaliszeski, Dr. Lee asserts that he was a common officer of the defendant entities and that the presence of a common officer is a factor that supports the finding of a single business enterprise under the Green case. Although Mr. Kaliszeski was the president of CRC Louisiana, there is no evidence in the record that he was an officer of CRC Florida.

Summary
We find that Dr. Lee has failed to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial to show that the defendant entities operated as a single business enterprise. Although some of the factors established in the Green case may have been present, based on the totality of the evidence in the record, there clearly were not enough factors present to create a genuine issue of material fact as to whether the defendant entities constituted a single business enterprise.
The facts in this case essentially involve a claim by an employee, Dr. Lee, against his former employer, CRC Florida. The principal investigator for CRC Florida became ill and could no longer conduct drug trials for the company. As a result the company was unable to meet all of its financial obligations, including the payment of any severance pay to which Dr. Lee might have been entitled under his employment contract. We find that the evidence shows that in the vast majority of the research projects undertaken by the defendant entities, the entities conducted different types of drug trials for different drug companies using different protocols and different institutional review boards. Unlike in the Green case, there was no fraud involved, and the various defendant entities conducted their own drug research businesses with sufficient independence from the others so that each of them cannot be held responsible for the contractual obligations of the others. Dr. Lee's first assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2: The trial judge erred when he dismissed the directly responsible party, that is, the employer with whom the plaintiff has signed a contract.
We find that this assignment of error has merit. As discussed above, CRC Florida was improperly dismissed from this case. The judgment of the trial court must, therefore, be reversed on this issue.
ASSIGNMENT OF ERROR NO. 3: The trial judge abused his discretion in granting the motion for summary judgment when he found that the information was "close."
In the instant case we are required to conduct a de novo review. Therefore, any error made by the trial court judge will be corrected by this Court. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 4: The trial judge committed error in denying the Motion to Compel the Banking Records because both the requirements of necessity and relevancy have been shown for the discovery of banking records.
This assignment of error relates to a discovery motion made by Dr. Lee. He subpoenaed Whitney National Bank to produce the banking records of CRC Louisiana, Florida Medical Management, CRC Florida, CRC Mississippi, and Audubon Research, and he also sought their income *329 tax returns. The defendants in this case then filed a motion to quash the subpoena duces tecum that had been served on the bank. After an in camera review of the bank and tax records sought by Dr. Lee, the trial court judge denied Dr. Lee's discovery motion. Dr. Lee applied to this Court for a supervisory writ to review the judgment quashing the subpoena, but this Court denied the application on the showing made.
Dr. Lee is now asking this Court to review the judgment denying the motion to compel the production of bank and tax records We are unable to do so, however, because the records that were reviewed in camera were not included in the record that is before us.[8] We can only consider the record before us on appeal. La. C.C.P. art. 2164. Therefore, we have no basis upon which to consider whether or not the trial court judge improperly denied Dr. Lee's discovery motion.

CONCLUSION
The decision of the trial court is affirmed as to all defendants except CRC Florida. The decision of the trial court as to CRC Florida is reversed, and this matter is remanded to the trial court for further proceedings in accordance with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Although F/V Medical does not contain the word "Louisiana" in its name, we are defining F/V Medical, d/b/a Clinical Research Center, L.L.C. as "CRC Louisiana" for ease of reference, since it conducted drug trials in Louisiana.
[2] We note that although Stephen I. Klein is listed as a defendant in the caption of this lawsuit, he is not made a defendant in the petition. We further note that although David Voelker was not listed as a defendant in the caption, he was named as a defendant in the petition. We assume that there was a typographical error in the caption.
[3] Piercing the corporate veil is a process by which courts disregard the limited liability normally afforded corporations. By piercing the corporate veil, courts can redress corporate misdeeds by the imposition of liability on another person or entity that would otherwise enjoy the benefits of the corporation's limited liability.
[4] A protocol is the plan that is written by a drug company establishing the procedures for testing a particular drug.
[5] An institutional review board is a group of people, including laymen and medical professionals, designated to review and to approve the protocols. The primary purpose of the review is to assure that the human subjects are protected. Although CRC Louisiana had an institutional review board of its own, most of the protocols for CRC Florida and CRC Mississippi were approved by independent commercial institutional review boards.
[6] CRC Louisiana's members were David R. Voelker, Juanita D. Frantzen, David J. Erath, and MGR Partners, L.L.C., and they owned, respectively, 30%, 30%, 15%, and 25% of the company. CRC Florida's members were Dr. Sun, MGR Partners, L.L.C., and Florida Medical Management, and they owned, respectively, 50%, 11.25%, and 38.25% of the company. CRC Mississippi's members were Mississippi Medical Holdings, L.L.C. and MGR Partners, L.L.C., which owed 77.5% and 22.5% of the company, respectively. Florida Medical Management's members were Voelker Management L.L.C., Juanita D. Frantzen, David J. Erath, Dale Kaliszeski, and Linda Meffert. They owned 37.10%, 37.10%, 9.03%, 12.90%, and 3.87% of the company, respectively. Audubon Research was owned by CRC Louisiana and Audubon Internal Medicine (A Professional Medical Corporation), each of which owned a 50% interest in the company.
[7] We note that the signature page of the copy of the operating agreement in the record is missing.
[8] For us to consider whether the banking records should have been produced, the banking records should have been submitted to us under seal as part of the record.