626 So.2d 370 (1993)
Clarinda WINGET, et al., Plaintiffs-Appellants,
v.
COLFAX CREOSOTING CO., et al., Defendants-Appellees.
No. 93-29.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
Rehearing Denied November 12, 1993.
Albin Alexandre Provosty, Gregory Lynn Jones, for Clarinda Winget, et al.
Raymond L. Brown Jr., John Dexter Ryland, for Colfax Creosoting Co., et al.
Grove Stafford Jr., for Southwestern Laboratories, Inc.
Frank Meredith Walker Jr., for Federal Rural Elec. Ins. Corp.
Before GUIDRY, THIBODEAUX and COOKS, JJ.
THIBODEAUX, Judge.
William Winget, husband of Clarinda Winget and father to the minor children, was killed on August 17, 1989, when a utility pole on which he was working broke near the ground and fell on him. At the time, he was employed by Claiborne Electric Co-op, Inc. as a lineman. The broken pole had been purchased by Claiborne from Colfax Creosoting Company in June of 1974 and installed in August of that same year.
Colfax manufactured and treated poles with creosote preservative for sale to utility companies. Colfax had contracted with Southwestern Laboratories, Inc. to certify that its poles met federal regulations mandated by Rural Electrification Administration bulletins. The Rural Electrification Administration (REA), a branch of the United States Department of Agriculture, issues bulletins setting forth, among other things, standards and specifications for treating utility poles. REA requires companies like Claiborne to purchase only certified poles. The pole in this incident had been certified by Southwestern as meeting all applicable REA requirements.
Mrs. Winget brought suit on her own behalf and for her minor children against Colfax and Southwestern for damages resulting *371 from her husband's death. A settlement was reached with Colfax but she continued to pursue her claim against Southwestern. Southwestern filed an exception of no cause of action which was denied upon plaintiffs' amendment of their petition. Southwestern filed another exception of no cause of action and a motion for summary judgment. The exception was denied, but summary judgment was granted and plaintiffs filed this appeal.

ISSUE & DISCUSSION
The sole issue before this court is whether as a matter of law, Southwestern was not liable for plaintiffs' damages and therefore entitled to summary judgment.
The trial judge, in granting summary judgment, focused exclusively on the contractual arrangement between Southwestern and Colfax. Finding that the agreement did not contemplate the safety of employees of Claiborne, and finding no issues of material fact, the trial judge concluded that Southwestern was not liable for William Winget's death.
The trial judge was obviously influenced by the jurisprudence which, at first blush, appears to exclude inspectors from responsibility for injury caused by the failure of the object inspected. The case most vigorously argued by Southwestern is Morcos v. EMS, Inc., 570 So.2d 69 (La.App. 4th Cir.1990). In Morcos, plaintiff was injured by a hydraulic crane and sued, among others, the company hired by the manufacturer of the crane to certify that it met federal safety standards. The court of appeal affirmed summary judgment holding that the contract to inspect was not entered into to protect persons such as plaintiff and the inspector had no duty to prevent the risk of injury to plaintiff.
The dissent in Morcos argued that the purpose of federal safety regulations is to provide safety in the workplace and was unwilling to conclude that a negligent inspection could not form the basis of recovery by an injured employee. In his dissent, Judge Schott distinguished State v. Joint Commission on Accreditation of Hospitals, 470 So.2d 169 (La.App. 2d Cir.1985) which was relied upon by the majority in its conclusion and also by Southwestern in this case.
State v. Joint Commission involved an inspection, done under contract, so that a hospital could qualify for a voluntary program of accreditation. Although inspectors certified that the hospital met health standards, individuals were injured as a result of tainted water used in dialysis. The court held the inspectors were not liable because the contract for inspection did not contemplate responsibility on the part of the inspectors for injuries to patients. Judge Schott distinguished the facts in Morcos from those in State v. Joint Commission on the basis that the former dealt with federally mandated safety regulations and the latter a voluntary program for the purpose of accreditation. We find merit in this distinction and in Judge Schott's discussion in general. Furthermore, we can distinguish Morcos from the present case.
The court in Morcos emphasized the lack of evidence presented by plaintiff, that the inspection of the crane had been proper or that any defect existed at the time of the inspection, in affirming the grant of summary judgment. Unlike Morcos, we have before us evidence presented by plaintiff that casts doubt on the quality of the inspection and certification of the pole that killed William Winget. Also, unlike Morcos, there exists a closer relationship between the inspector and the purchaser of the manufactured item. This is shown through language in the REA bulletins indicating that the entity responsible for inspecting acts as representative of the purchaser. Without the certification of the inspector, there can be no purchase.
Southwestern argues that Morcos is dispositive of this case and that a negligent inspection can never give rise to liability for injuries suffered by a party not privy to the contract creating the obligation to inspect. This flies in the face of the purpose of LSA-C.C. arts. 2315 and 2316. Our civilian tort law provides an action to those injured by the negligent acts of another party. Liability is determined by applying the duty-risk analysis, recently reiterated in Roberts v. Benoit, *372 605 So.2d 1032 (La.1991), to factual conclusions. Whether Southwestern is liable to plaintiffs depends on facts yet determined. Where genuine issues of material fact exist, summary judgment should not be granted. LSA-C.C.P. art. 966.
Unlike in Morcos, plaintiffs in this instance sufficiently raised questions to warrant further inquiry into the role Southwestern may or may not have played in William Winget's death. A trial on the merits is the proper method for obtaining sufficient facts to which legal analysis may then be applied in order to determine if Southwestern had a duty which encompassed the risk to William Winget. See, Mayoral v. Middle South Utilities, 618 So.2d 436 (La.App. 5th Cir.1993); Oller v. Sharp Electric, Inc., 451 So.2d 1235 (La.App. 4th Cir.1984), writ denied 457 So.2d 1194 (La.1984); and, Marine Insurance Company v. Strecker, 234 La. 522, 100 So.2d 493 (1958).
Southwestern answered the appeal and assigned one error. However, it failed to brief this issue and under Rule 2-12.4, Uniform Rules, Courts of Appeal, it is considered abandoned.
For the foregoing reasons, summary judgment in favor of Southwestern is reversed and this case is remanded for trial on the merits. Southwestern is charged with all costs of this appeal.
REVERSED AND REMANDED.
GUIDRY, J., concurs and assigns reasons.
GUIDRY, Judge, concurring.
I fully agree that, under the particular circumstances of this case, summary judgment dismissing plaintiffs' suit was improper.
The record before us reflects that Southwestern's involvement with the defective utility pole exceeded that of a simple inspection. Under its contract with Colfax, Southwestern had to conduct specific tests during the treating process and monitor treatment data such as temperature, pressure and vacuum readings. The inspector of each batch of poles monitors the complete manufacturing process, keeps records in regard thereto, personally hammer stamps his approval of the pole at two different stages of the manufacturing process and makes the final decision concerning whether a pole should be accepted as being in compliance with REA standards.
According to the record, the inspection was a requisite part of the manufacturing process and the finished product could not have been sold to Claiborne or any other REA participant without the obligatory certification. Indeed, it was in Southwestern's power to keep any under standard pole out of commerce. Under these circumstances Southwestern is more akin to a manufacturer who places a defective product into commerce rather than the inspector who examines a "product" for visible defects or a work place for unsafe practices or conditions.
For these reasons, I respectfully concur.