STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-840


BRADLEY BROUSSARD

VERSUS

GULFPORT ENERGY CORPORATION, ET AL.



**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2015-2233
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Phyllis M. Keaty, Judges.




AFFIRMED.

Randall Kurt Theunissen
S. Brian Perry
Allen & Gooch
Post Office Box 81129
Lafayette, Louisiana 70598-1129
(337) 291-1000
Counsel for Defendants/Appellees:
Wet Tech Lighting, Inc.
Wet Tech Energy, Inc.

**Robert A. Mahtook, Jr.**
**Mahtook & LaFleur, LLC**
**Post Office Box 3089**
**Lafayette, Louisiana 70502-3089**
**(337) 266-2189**
**Counsel for Defendant/Appellee:**
**AFX Petrologix, LLC**

**Leo Raymond McAloon, III**
**Gieger, LaBorde & Laperouse, LLC**
**One Shell Square**
**701 Poydras Street, Suite 4800**
**New Orleans, Louisiana 70139**
**(504) 561-0400**
**Counsel for Defendant/Appellee:**
**Shamrock Management, LLC**

**Marc D. Moroux**
**Juneau David, APLC**
**Post Office Drawer 51268**
**Lafayette, Louisiana 70505-1268**
**(337) 261-1408**
**Counsel for Defendant/Appellee:**
**Gulfport Energy Corporation**

**Thomas M. Flanagan**
**Sean Brady**
**Andy Dupre**
**Anders F. Holmgren**
**Flanagan Partners LLP**
**201 St. Charles Avenue, Suite 2405**
**New Orleans, Louisiana 70170**
**(504) 569-0235**
**Counsel for Plaintiff/Appellant:**
**Bradley Broussard**

**J. Kyle Findley**
**Kala Sellers**
**Adam Lewis**
**Arnold & Itkin, LLP**
**6009 Memorial Drive**
**Houston, Texas 77007**
**(713) 222-3800**
**Counsel for Plaintiff/Appellant:**
**Bradley Broussard**

**F. Douglas Ortego**
**LeBas Law Offices**
**201 Rue Iberville, Suite 100**
**Lafayette, Louisiana 70508**
**(337) 236-5500**
**Counsel for Intervenor:**
**American Interstate Insurance Company**

**KEATY, Judge.**

Plaintiff/Appellant, Bradley Broussard, appeals the trial court's grant of summary judgment in favor of Defendant/Appellee, Shamrock Management, L.L.C. For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

This personal injury matter stems from injuries sustained by Broussard on January 21, 2015, while working in the course and scope of his employment with AFS Petrologix, LLC, on platform 114 in the East Hackberry Field in Calcasieu Lake, State Lease 50. Broussard was inspecting a navigational light on top of a pole when it broke, causing him to fall into the water below and sustain injuries. As a result, Broussard filed an Original Petition for Damages on May 6, 2015, against Gulfport Energy Corporation as the owner and/or operator of the platform based upon negligence and premises liability. Broussard's workers' compensation insurer, American Interstate Insurance Company, filed a Petition of Intervention. On April 26, 2016, Broussard filed his First Amended Petition for Damages, naming Wet Tech Lighting, Inc., Wet Tech Energy, Inc., and Shamrock Management, L.L.C., as additional Defendants. In his amended petition, Broussard alleged that Wet Tech Lighting, Wet Tech Energy, and Shamrock were negligent by failing to properly inspect and maintain the navigational light and pole.

On March 20, 2018, Shamrock filed a motion for summary judgment, alleging that it was not liable for Broussard's injuries. Shamrock stated that it did not own or operate the platform and had no employees working for Gulfport on the date of the incident at any location. Broussard filed an opposition memorandum. Following a hearing on May 14, 2018, the trial court granted Shamrock's motion for summary judgment. The trial court's written judgment was signed on May 30, 2018, which Broussard now appeals.

On appeal and in his sole assignment of error, Broussard contends that the trial court legally erred "in finding the absence of disputed material facts and granting summary judgment as a matter of law."

## STANDARD OF REVIEW

The standard of review utilized by an appellate court when reviewing a trial court's grant of a motion for summary judgment is de novo. *Duncan v. U.S.A.A. Ins. Co.,* 06-363 (La. 11/29/06), 950 So.2d 544. Under this standard of review, the appellate court uses the same criteria as the trial court in determining if summary judgment is appropriate pursuant to La.Code Civ.P. art. 966. *Id.* The criteria enunciated in La.Code Civ.P. art. 966(A)(3) provides that "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." "A fact is 'material' when its existence or nonexistence may be essential to [a] plaintiff's cause of action under the applicable theory of recovery." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. Additionally, a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Id.*

Louisiana Code of Civil Procedure Article 966(D)(1) explains the mover's burden of proof on summary judgments as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

2

Broussard contends the trial court legally erred by finding the absence of disputed material facts and granting summary judgment as a matter of law. His argument stems from a contract between Gulfport and Shamrock whereby the latter ran production operations and performed platform inspections through its employee, Terry Benoit. Broussard asserts that Benoit was employed by Shamrock on the date of the accident and that his negligent inspections render Shamrock vicariously liable. Even if this court finds that Benoit was not employed by Shamrock on the date of the accident, Broussard asserts that Benoit was negligent in his inspections before December 2014, during his employment with Shamrock.

In opposition, Shamrock contends that Benoit was not its employee on the date of the accident. According to Shamrock, Benoit stopped working for it approximately five and one-half weeks prior to the incident, which is when the contract between Shamrock and Gulfport terminated. Shamrock further submits that there is no evidence that Benoit performed negligent visual inspections prior to the incident when he worked for Shamrock and during the existence of the contract between Shamrock and Gulfport.

In his amended petition, Broussard claims that Shamrock breached its duty by failing to maintain, inspect, and/or repair the premises, equipment, or work environment and by failing to warn of hidden dangers and/or defective conditions. His claims against Shamrock are based upon general negligence. Negligence is governed by La.Civ.Code art. 2315(A) and provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." "Louisiana courts use a duty-risk analysis in negligence cases to determine whether liability exists under the facts of a particular case." *Cormier v. Albear*, 99-

1206, p. 6 (La.App. 3 Cir. 2/2/00), 758 So.2d 250, 254. This analysis requires a plaintiff to prove five separate elements, as follows:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Christy v. McCalla*, 11-366, pp. 8-9 (La. 12/6/11), 79 So.3d 293, 299.

Whether a party owes a duty is a question of law. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So.2d 606. In order to determine whether a duty exists, courts assess whether jurisprudential, statutory, or policy rules may be applicable to the facts and circumstances of the case. *Id*. "[T]he particular facts and circumstances of each individual case determines the extent of the duty and the resulting degree of care necessary to fulfill the duty." *Socorro v. City of New Orleans*, 579 So.2d 931, 938 (La.1991). "In general, a contractor owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations." *Lyncker v. Design Engineering, Inc*., 07-1522, p. 2 (La.App. 4 Cir. 6/25/08), 988 So.2d 812, 814, *writ denied*, 08-1669 (La. 10/24/08), 992 So.2d 1036.

Shamrock contends that it owed no duty to Broussard at the time of the accident because his injury occurred after the termination of Shamrock's contract with Gulfport. The record on review reveals the evidence submitted by Shamrock, includes: Broussard's and Benoit's deposition testimony; Gulfport's answers to Broussard's Interrogatories and Request for Production of Documents; Shamrock's objections and responses to Broussard's first set of Interrogatories and Requests for Admissions; and an affidavit of Becky McManus. According to McManus's affidavit, she is the Vice President of Administration for Shamrock and has held this

4

position since September 29, 2015. She is in charge of Shamrock's Human Resource Department and is aware of the employees' personnel files and employment status. McManus avers that Benoit was employed by Shamrock from June 30, 2009 until December 15, 2014, when he stopped working for Shamrock and started working for Grizzly Marine. According to McManus, Benoit was not employed by Shamrock on the day of Broussard's accident. McManus attested that Shamrock had no employees working for Gulfport at its facilities on January 21, 2015. McManus's affidavit is supported by Shamrock's response to Broussard's Interrogatories and Request for Production of Documents wherein it noted the following: "Shamrock had no employees working for Gulfport at the Hackberry field on the date of the incident."

In order to show a genuine issue of material fact with respect to identifying Shamrock as Benoit's employer on the date of the incident, Broussard relied upon Gulfport's discovery responses which state: "Upon information and belief, Gulfport believes that . . . Terry Benoit, was employed by Shamrock Management." Broussard also relied upon Benoit's deposition testimony wherein he admitted to working for Shamrock through December 2015. We note that this date, i.e., December 2015, falls one year after Benoit was alleged to have stopped working for Shamrock, i.e., December 15, 2014, according to McManus's affidavit.

Our review of Benoit's testimony shows that the following colloquy occurred at the beginning of his deposition:

> Q. How long were you with Shamrock?
>
> A. Until--that was probably--I don't know specific.
>
> Q. You can't tell me a date?
>
> A. Well, it's around in December, somewhere around in that area of whenever the contract expired, when they lost the contract and we went with another company.

5

Q.      You remember the date generally when that happened?

A.      In December.

Q.      December of?

A.      2015, I believe it is.

Q.      So December of 2015, and then you said it went to a new contractor?

A.      Right.  Yes.

Q.      And who was the new contractor?

A.      Grizzly.

Later in his deposition, Benoit clarified that he no longer worked for Shamrock as of December 15, 2014, which is in line with McManus's affidavit and Shamrock's discovery responses.  Specifically, his testimony provides:

Q.      . . . . If your Shamrock personnel file says that your last day of work for Shamrock was December 15, 2014, do you have anything to dispute that?

A.      No, sir.

Q.      And so if that information is correct, you were no longer employed by Shamrock as December 15, 2014?

. . . .

A.      Correct.

. . . .

Q.      So after you left Shamrock's employment, did you immediately go to employment of Grizzly Marine?

A.      Yes.

Q.      Is it your testimony that on the date of this incident you were employed by Grizzly Marine?

A.      Correct.

Q. Is it your testimony that for the five weeks before this incident from the day you left Shamrock you went--you were employed by Grizzly?

A. Correct.

Additional deposition testimony by Benoit reveals that he was not employed by Shamrock on the day of the accident, as exhibited in the following colloquy:

Q. Let's go back. Any inspections that you would have--any visual inspections of the Nav-Aid lights you would have done prior to December 2014, you would have done as an employee of the prior contractor before Grizzly, right?

A. Yes.

Broussard's own deposition testimony reveals his uncertainty as to whether Shamrock employed Benoit on the day of the incident. This is shown based upon the following colloquy:

Q. Do you now know by whom Terry Benoit was employed on January 21st, 2015?

A. I guess so.

Q. Who was his employer on that day?

A. I believe Shamrock.

Q. Okay. And that's speculation on your part rather than knowledge?

A. Right.

We find that the evidence in the record reveals that Benoit worked for Grizzly on the date of the accident. Any inconsistency with the date initially provided in Benoit's deposition was clarified through his additional deposition testimony. Benoit's deposition testimony along with McManus's affidavit and Shamrock's discovery responses directly contradict the evidence offered by Broussard in his effort to create a genuine issue of material fact with respect to the identity of Shamrock as Benoit's alleged employer on the date of the accident.

7

An additional argument asserted by Broussard on appeal is that prior to December 2014 when Benoit was employed by Shamrock, he negligently inspected the platform where the accident occurred. In Louisiana, tort liability exists for negligent inspection. *See Winget v. Colfax Creosoting Co.*, 626 So.2d 370 (La.App. 3 Cir. 1993), *writ denied*, 633 So.2d 580 (La. 2/4/94). "Our civilian tort law provides an action to those injured by the negligent acts of another party. Liability is determined by applying the duty-risk analysis[.]" *Id.* at 371. "Liability based on negligence under [La.Civ.Code art.] 2315 can only be imposed when a defendant is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time." *Hardenstein v. Cook Constr., Inc.*, 96-829, pp. 7-8 (La.App. 1 Cir. 2/14/97), 691 So.2d 177, 183, *writ denied*, 97-686 (La. 4/25/97), 692 So.2d 1093. Thus, we will use the duty-risk analysis to determine whether Shamrock is vicariously liable for Benoit's alleged negligent inspections of the navigational light.

Benoit's deposition testimony reveals that he was a production operator for different contractors who had contracted with Gulfport at different times and was assigned to Hackberry Field, State Lease 50, from 2009 to 2016. As a production operator, he would maintain well control and produce hydrocarbons and fluids out of the well. Benoit also performed monthly visual inspections of the platforms, which he referred to as cribbings, and its fixtures. His visual inspections required him to walk around and check the lights to ensure that they were "in proper working condition." If Benoit found any issues during his visual inspections, he would report them to his supervisor, a Gulfport employee. According to Benoit's testimony, other inspections were performed by third parties apart from his visual inspections. Benoit testified that he would take third parties to the sites where inspections were performed. However, his supervisor/production foreman was in charge of managing

whether inspections, maintenance, and repairs were performed. Benoit advised that he did not perform maintenance on the well sites at State Lease 50.

Benoit testified at length regarding the navigational light and cribbing where Broussard's accident occurred. Benoit noted that he visually inspected the navigational light at least once a month prior to the accident. During these visual inspections, he never saw anything that needed repair. Benoit acknowledged that during his final visual inspection prior to Broussard's accident, it appeared to be in good working order. He also acknowledged the pole's condition in the following colloquy:

> Q.    . . . At no point was the condition of that pole reported to you as rotting or in need of replacement?
>
> A.    Correct.
>
> Q.    And you never made such an observation either?
>
> A.    Correct.

Broussard's deposition testimony in the record indicates that he was the light inspector for AFS who inspected the subject light on behalf of Gulfport. Broussard explained that he takes certain precautions to ensure a safe work area, which includes looking at poles, brackets, and mounting fixtures. He took those precautions on the day in question by stating: "Yeah, I looked at it and I didn't see anything wrong." Broussard advised that nothing looked rusty, corroded, discolored, weathered, unsafe, or hazardous. His testimony reveals that he was in the process of removing bolts from the light prior to the incident. When asked whether he believed that Benoit was responsible for the accident, Broussard replied, "[n]o, not really." Broussard explained that Benoit was rushing him on the day in question. However, Broussard admitted that he had authority to stop work which he did not utilize

because he did not "feel anything was unsafe." Broussard agreed that whatever caused the pole to break, neither he nor Benoit could see it.

The foregoing shows that Benoit had no actual or constructive knowledge of a defect in the navigational light and pole. This is supported by the evidence in the record which reveals that Benoit never observed a defect during his monthly visual inspections along with Broussard's testimony that the area looked safe and that whatever caused the pole in question to break, neither he nor Benoit could see it.

Accordingly, the trial court correctly granted summary judgment in favor of Shamrock. This assignment of error is without merit.

## DECREE

For the above reasons, the trial court's judgment granting the motion for summary judgment in favor of Defendant/Appellee, Shamrock Management, L.L.C, is affirmed. All costs associated with this appeal are assessed to Plaintiff/Appellant, Bradley Broussard.

**AFFIRMED.**